## PAINE *v.* DREW.

The provisions of the statute of limitations, that "if the defendant, at the time the cause of action accrued, or afterward, was absent from and residing out of the State, the time of such absence shall be excluded, in the computation of the several times before limited for the commencement of personal actions," applies to defendants who have never resided in the State, as well as to those who have resided in it and have removed from it.

Citizens of other States are allowed to sue in our courts, upon the same ground on which our citizens stand, and with the same rights in the application of the remedy that the latter possess.

Therefore, a citizen of the State of Maine, suing a citizen of Massachusetts in our courts, and the court having acquired jurisdiction of the parties by legal service upon the defendant, the statute of limitations is not available as a defense in any other manner than as though the plaintiff was a citizen of this State.

Ordinarily the statute of limitations of a State does not in any way attach itself to or affect the contract. It is no part of the *lex loci contractus*, but it affects and limits the remedy merely and belongs purely to the *lex fori.*

Hence such a statute does not operate as a discharge of a contract, or as a defense against the contract itself, but is interposed as a bar to the maintenance of an action. It limits the time within which the remedy must be pursued or applied.

An action may be maintained in our courts, when not barred by our statute of limitations, upon a contract made in another State, though an action thereon may be barred by the statute of the State where the contract was made and was to be performed.

ASSUMPSIT, upon a bill of exchange and an account annexed. There were several pleas, replications and rejoinders filed in the case, and issues to the jury had been made and joined upon all the pleadings except the second plea of the defendant, which was, "that the causes of action in the plaintiff's declaration supposed, or any or either of them, did not accrue to them at any time within six years next before the commencement of this suit." To this second plea the plaintiffs replied, " that by reason of any thing by the defendant in his second plea alleged, they ought not to be barred," &c., " because they say that at the time when the said several causes of action in their said declaration and specification set forth, accrued, and always afterward until within six years next before the commencement of this suit, to wit, from the first day of January,

1849, until the first day of January, 1858, the defendant was absent from and residing out of the State," &c., with a verification.

To this replication the defendant rejoined, that " as to the said replication of the said plaintiffs to the said second plea of him, the said defendant, the said plaintiffs ought not, by reason of any thing by them in that replication alleged, to have or maintain their aforesaid action thereof against him, the said defendant, because he says that at the said several times when the said several causes of action in the said plaintiffs' declaration and specification set forth, are alleged to have accrued, and when the contracts on which said several causes of action are alleged to be founded, were made, and long before, the said plaintiffs were and ever since have been, citizens of and residents in the city of Bangor, in the State of Maine, and he, the said defendant, a citizen of and resident in the city of Boston, in the Commonwealth of Massachusetts, and that the said contracts, or any or either of them, were not made within the State of New-Hampshire, nor to be performed therein ; but that the said contracts were each severally made either in said Commonwealth of Massachusetts or in said State of Maine, and were each severally to be performed either in said Commonwealth of Massachusetts or in said State of Maine ; and that at the time of the commencement of this action, long before and ever since, by the laws of said Commonwealth of Massachusetts, it was established and enacted that all actions of assumpsit, or upon the case, founded on any contract or liability, express or implied, should be commenced within six years next after the cause of action should accrue, and not afterward ; and also that at the time of the commencement of this action, long before and ever since, by the laws of said State of Maine, it was established and enacted that all actions of assumpsit or upon the case, founded on any contract or liability, express or implied, should be commenced within six years next after the cause of action should accrue, and not afterward ; and the defendant avers that this action could not have been commenced and maintained against him at the time it was commenced here, or at any other time since, either in the said Commonwealth of Massachusetts or in said State of Maine, but that the same, had it been commenced in said Commonwealth of Massachusetts or in said State of Maine at the time it was commenced here, or at any time since, would have been barred in them respectively by their respective laws aforesaid."

The plaintiffs demurred to the rejoinder, and the questions of law arising upon the case were reserved and assigned to the law term.

*Wheeler & Hall,* for the plaintiffs.

The demurrer should be sustained.   Our statute of limitations is not confined to inhabitants of this State ; *Sissons* v. *Bicknell,* 6 N. H. 557 ; *Dwight* v. *Clark,* 7 Mass. 515 ; *Wilson* v. *Appleton,* 17 Mass. 180 ; *Hall* v. *Little,* 14 Mass. 203 ; even if the contract was made in another State, and both parties were domiciled and resident there until it became barred in such State.   *Bulger* v. *Roche,* 11 Pick. 36 ; *Byrne* v. *Crowninshield,* 17 Mass. 55.

The statute of limitations affects the remedy only ; hence the *lex*

*fori* must prevail. *Bulger* v. *Roche*, 11 Pick. 35; *Putnam* v. *Dike*, 13 Gray 535.

The defendant by his appearance has waived all exception to the jurisdiction. *Putnam* v. *Dike*, 13 Gray 535.

*Christie*, for the defendant.

We do not undertake to set up the statute of limitations of another State in bar of an action commenced here. Therefore the question of *lex loci* or *lex fori* is not involved in the case, as seems to be supposed by the plaintiffs' counsel.

The question raised by the demurrer is one of the construction and application of the New-Hampshire statute of limitations. It is obvious that this action is barred by the force of the substantive limitation of our statute, unless the defendant is excluded from its benefits by the saving clause, which provides that "If the defendant, at the time the cause of action accrued, or afterward, was absent from and residing out of the State, the time of such absence shall be excluded in the computation of the several times before limited for the commencement of personal actions." Comp. Stat., ch. 192, secs. 4 and 9.

The inquiry then is, does this exception operate as well against persons coming from abroad, or removing to the State for the first time, as against citizens or residents going abroad and returning after a term of absence? or, in other words, does the fact that both the suitors were, when the cause of action arose, and ever since have been citizens and residents of other States, open the courts of New-Hampshire to this litigation between strangers, against which they would have been closed if both parties, or the defendant only, had resided here? Holding the negative of this question, we maintain —

1. That the maintenance of actions at all in one State of the Union by citizens of another rests only upon comity, and the obligation imposed by the federal constitution. Constitution of U. S., sec. 4, art. 2. But neither comity nor this constitutional provision extends the rights of non-resident suitors, or increases the obligations of the courts of this State in respect to them, beyond the rights and the obligations in the case of its own citizens. Story Conf. Laws, *passim*.

2. It is manifest by the words of the statute that the exception can embrace no class of persons except those who have been present in the State, and have departed therefrom. "Absence," says Webster, "primarily implies prior presence." No person can properly be said to be absent from the State who has never been in it.

The legislative will is to be deduced from the terms employed to express their intention, and that meaning must be given to words imparted to them by the common consent of those who employ them as a medium for the communication of ideas. It is well settled that the affirmative description of a class of persons necessarily excludes all who are not comprised within its literal meaning, and that it is not competent for courts of justice to include any other persons within a statutory exception or saving clause than such as

are embraced within its exact letter and import. 3 Johns. Ch. 146; Ang. on Limit. 532; 1 T. R. 52; 17 Ves. 38.

Says *Hemphill*, C. J., in 5 Tex. 106, "accuracy of definition requires that the word absence should never be applied to persons who have never been within the limits of a country."

Had our legislature intended a construction of the word different from that uniformly given and established before, they would have so declared. We say, therefore, that this section embraces no class of persons except absentees from the State; that is, such as have absented themselves, and whose return to the State may be predicated as a possible event; and it can not be so extended as to cover those whose return to the State is physically impossible, for the reason that they never have been previously within our territorial limits. This is the plain and ordinary acceptation of the terms employed, and it would be a wide departure from just principles of construction and the usual signification of language to hold that an immigrating debtor should be included under words descriptive of returning absentees only.

3. The construction we claim is supported by authority. The section corresponding to ours in the Texas statute of limitations is in these words: "If any person against whom there is or shall be a cause of action, is or shall be without the limits of this republic at the time of the accruing of such action," or afterward, then the time of such absence shall not be accounted, &c. In a case presenting exactly the same state of facts as the case at bar, it was held there that this saving clause was applicable to citizens or residents of the State alone; that it was restricted to causes of action against persons who had been within the limits of the State, and had absented themselves and returned; and that persons coming to the State for the first time were not within the letter of the statute, and consequently not within the scope of its operation. *Snoddy* v. *Cage*, 5 Tex. 106. This case was cited and confirmed in *Love* v. *Doak*, 5 Tex. 343, and declared to be the settled law of the court. The question was raised anew, however, in *Moore* v. *Hendrick*, 8 Tex. 253; and after full consideration it was again held that the exception does not prevent the statute from running against a cause of action where the debtor was not in the country at the time of the accruing of the cause of action.

The saving clause in the New-Jersey statute provides that "if the debtor shall not be a resident in this State when the cause of action accrues, or shall afterward remove from this State, then the period of his non-residence shall not be computed," &c. In a case exactly in point there, in a masterly opinion by *Hornblower*, C. J., it was held, as in Texas, that the provision had no operation on claims against persons who had never been in the country, and that the plaintiff never having been a resident in New-Jersey was not such a creditor as the legislature had in view. *Beardsley* v. *Southmayd*, 3 Green 171. That construction has since been repeatedly adjudged in New-Jersey on full and mature consideration. *Baberer* v. *Brentnall*, 3 Harr. 262; *Hale* v. *Lawrence*, and *Howe* v. *Lawrence*, 1 Zab. 714. We submit that the phraseology of both these provisions

is much less favorable to the construction they received than the language of our statute.

The cases in the English books and in Massachusetts are inapplicable, as the statute under which respectively the decisions were made makes the absence of the plaintiff or creditor from the jurisdiction an exception to the running of the statute. *Lafonde* v. *Ruddock,* 24 E. L. & E. 239; *Bulger* v. *Roche,* 11 Pick. 36; *Von Hemert* v. *Porter,* 11 Met. 210; *Hall* v. *Little,* 14 Mass. 203; *Wilson* v. *Appleton,* 17 Mass. 180.

In *Sissons* v. *Bicknell,* 6 N. H. 557, the exact point in the case at bar did not arise, issue being joined there on the question whether the defendant left attachable property in the State. The question here presented seems to have been very little considered in that case.

We think it will be found that in all the States where analogous exceptions have received a construction apparently adverse to our position, either the binding force of the statutes of limitation in other States has been the simple point in controversy, or the decisions have been put expressly upon language in the statute saving the rights of non-resident and foreign creditors in broad terms, or upon words so extensive in their just application and interpretation as to include every debtor without the State, whether he had ever been a resident or not. For example, the phraseology of the statute in Connecticut is, "the time during which the defendant shall be without the State shall not be computed," &c. In New-York the same language is used. The Massachusetts statute excepts the time during which a person out of the State at the time the action accrues shall be out of it, &c. The Maine statute is an exact copy of that of Massachusetts. In New-Hampshire the statute which governed the case of Sissons v. Bicknell provided, that "if at the time the cause of action accrued, or afterward, the defendant resided without the limits of the State," &c., " the plaintiff shall be at liberty to commence his action within six years after the cause of action accrued, exclusive of the time during which the defendant shall have resided without the limits of the State." Such provisions as these, unaccompanied by other modifying or explanatory words, the courts might plausibly and perhaps reasonably hold to cover such a case as the one at bar. But our present statute is couched in terms far more limited in their application, and is not, we insist, to be governed by the constructions put upon other and different expressions.

4. The historical facts connected with this saving clause in our statute furnish an argument in favor of our position. Considering our present statute as an amendment of the old one, we are led to this conclusion; for, excepting an omission in regard to property, which is immaterial to this inquiry, the new statute is simply the old with the words "absent from and residing out of the State," instead of "residing out of the State." Now what was the object of interpolating the words "absent from?" Evidently to declare that those within the exception must be not merely non-residents, but also absent from the State, and to limit and confine its application to those persons who were designated by the same

words in the Massachusetts statute, namely, persons who had previously been in the State, but had absented themselves from it, either at the time the cause of action accrued or afterward. The words of the old statute were palpably as broad and comprehensive in their application as the two phrases together, and the additional words were either idle and unmeaning, or their effect was to limit and restrict the terms of the old statute. That such was the design of the legislature in employing them we think is so manifest as to be unmistakable.

We earnestly invite attention to this consideration, believing that it throws a clear light upon the legislative intention, and affords conclusive proof of the correctness of the conclusion which we urge upon the court.

5. It was exclusively in reference to causes of action accruing here that the saving clause was introduced. In respect to such cases there is a reason why the remedy should be saved on the contingencies of the debtor's absence and non-residence when the cause of action accrued, or afterward. The design of the exception is to save the suit when its prosecution is prevented by the withdrawal or absence of the party liable to the action from the jurisdiction under which it had its origin, or within which the creditor may rightfully expect his presence; because, in the first place, if the creditor resides here, or the contract is to be performed here, and the debtor is absent from the State when the right of action accrues, the creditor ought not to be compelled to go abroad in search of his debtor, but should be permitted to sue him at any time within six years after he comes into the State; and in the second place, if the debtor absconds or removes out of the State after the accrual of the action, he deprives his creditor of the opportunity of suing him here, where the contract was to be performed or the cause of action arose, and he ought not therefore to derive any advantage from his own voluntary absence.

6. All the reasons, both of public policy and private justice, which suggest the limitation of actions as between citizens or residents, apply with greater force when the parties and the cause of action both belong to a foreign jurisdiction.

If public policy requires that the courts of this State should not be burdened with controversies between its own citizens, when the indolence or delay of suitors has suffered lapse of time to obscure, pervert, or obliterate evidence, *a fortiori* the same public policy would suppress such litigation between foreign suitors.

If the ends of private justice are not subserved by entertaining suits wherein mere lapse of time embarrasses investigation and adjudication, *a fortiori* the remoteness of the locality of the transaction, and cause of action, and of the evidence involved in it, should exclude such suits from the forum. Ang. on Lim., ch. 1, secs. 9, 11.

The general policy of this legislation requires that domestic and foreign claims should be subjected to the same bar. The provisions of the statute were intended to produce repose and repress litigation. This object would be defeated by the construction contended for by the plaintiffs' counsel. We should thus open the doors of

our courts and invite foreign suitors to make them the arena of litigation in all cases where their domestic statute of limitations would effectually bar their demands. The consequences of such a construction would be deplorable. Stale and antiquated claims, which we should summarily dismiss if between our own citizens, and which no plaintiff would venture to sue for at home, would be revived and successfully prosecuted against persons casually traveling on business or for pleasure, or who might change their residence after a lapse of years, provided they had not lived in their new domicil long enough to be protected by the local statute of limitations. Such a rule would make it hazardous for strangers to come within our borders, would make our courts instruments of oppression and vexation to visitors, and seriously interfere with that freedom of travel and intercourse which it is so desirable to preserve.

Thus, having shown the correctness of our construction of the law in this case, on grounds of philology, of authority, of history, of reason and policy, we claim that the defendant is necessarily entitled to the benefit afforded by the general operation and course of the statute of limitations.

*Wheeler & Hall,* in reply.

The statute of limitations relates to the remedy, and, therefore, can not operate outside of the territorial limits of the State where it is enacted. It could not, therefore, begin to run against a contract made out of the State, between parties residing out of the State, until the parties in some way place themselves within the jurisdiction of our courts. The plea in this case admits that a cause of action has existed in this State, else the statute could not operate, and the plea could not be true ; and states the defense to be that it has existed more than six years, and hence, by force of the statute, is barred. The rejoinder is that the contract was not made in this State, and the parties are in such a situation that a cause of action could never have existed in this State. The rejoinder is then a departure from the plea — it states a different defense. If the construction of our statute, which we claim to be the true one, is applied to the facts stated in the rejoinder — and, being pleaded, they are to be taken as admitted — the statute of limitations of New-Hampshire can not be a defense to this action, because the defendant has always been within the exception in the ninth section. Absent and absence are not limited in their meaning to the sense in which the defendant would wish to have them used. They are both used to signify "not present," "at a distance," &c., without reference to prior presence, and are so defined by Webster and Worcester.

In accordance with this meaning is the construction given to the Massachusetts statute of limitations as found in their Revised Statutes, 1836. *Von Honnit* v. *Porter,* 11 Met. 210; *Mooar* v. *Bates,* 1 Cush. 510; *Way* v. *Sperry,* 6 Cush. 239; *Putnam* v. *Dike,* 13 Gray 535, before cited. That statute reads, "and if, after any cause of action shall have accrued, the person against whom it has accrued shall be absent from and reside out of the State, the time of his absence," &c. Yet these decisions say that foreigners and persons

who have never been within the Commonwealth are within its pro-
visions. The word return signifies "to go back," "to come back
to the same place;" and in the same statute occurs the phrase "did
not leave property therein;" yet the court have held repeatedly that
the statute applied to persons who have never been within the Com-
monwealth. *Dwight* v. *Clark*, 7 Mass. 516; *Hall* v. *Little*, 14 Mass.
203; *Bulger* v. *Roche*, 11 Pick. 35; *Little* v. *Blunt*, 16 Pick. 359;
*Byrne* v. *Crowninshield*, 1 Pick. 266, note. The word return, in a
similar statute in New-York, received the same construction. *Rug-
gles* v. *Keeler*, 3 Johns. 261; *Fowler* v. *Hunt*, 10 Johns. 464. In
England, in *Laford* v. *Ruddock*, 13 C. B. 813; and in our own
State in *Sissons* v. *Bicknell*, 6 N. H. 557, where the "exact point"
we submit did arise, and the court said, after citing the author-
ities in Massachusetts before referred to, "we are of opinion that
the case is within the meaning of the third section in the statute,"
which will be found to be substantially the same as that recited
from the laws of Massachusetts.

A word with reference to our present statute. Let us supply what
must be grammatically understood, and then look at the sense of it
with the defendant's construction. It would read: "If the defend-
ant, at the time the cause of action accrued, was absent from and
resided out of the State," &c. A person who was absent from and
resided out of the State must be a non-resident, and the person at the
time the cause of action accrued must be a non-resident. Now did
the legislature mean to discriminate between non-residents, and say
that as to non-residents who once, perhaps many years before, resided
in this State, the statute applies, but as to non-residents who never
resided in this State it does not apply? If a person must have been
in this State, how long must he have been here? If he should come
in one train of cars and go out in the next, there would be a prior
presence, and the philological part of the argument would be
answered. For aught that appears in the rejoinder, such may have
been the fact in this case.

In *Gilman* v. *Cutts*, 23 N. H. 381, the court say, substantially, that
the only difference between the old and new statute of limitations,
in this State, is the omission, in the new, in regard to property;
and it seems that the idea of the court of the meaning of the term
absence in this statute, was any such state or situation of a debtor
that the creditor could not obtain legal service upon him. *Gilman*
v. *Cutts*, before cited. Same case in 27 N. H. 358, and *Ward* v. *Cole*,
32 N. H. 456.

It is said, "it is in reference to causes of action accruing here that
this saving clause is introduced." The statute says no such thing.
It in no way, in terms, discriminates as to where the cause of action
accrues, or where it is payable; and had such a distinction been
intended, it is very singular that language had not been used to
express it. Philology would be a poor argument in support of this
position; history and authority no better. If reason and policy sus-
tain it, we would commend it to the legislature. The other sugges-
tions in the defendant's brief have been so often urged, and as often
overruled, that we do not deem it necessary to advert to them.

SARGENT, J.  The statute of limitations known as the 21st James I., ch. 16, passed in 1623, and which was in fact in amendment of and in addition to the statute 32 Henry VIII, ch. 2, passed in 1540, has, among others, the following provision, that if any person, being entitled to any such action, &c., shall be, at the time any such cause of action accrued, "beyond the seas," then such person shall be at liberty to bring such action within such times as are before limited, after his return from beyond the seas.  This statute contained no exception applicable to debtors "beyond seas," but only in relation to creditors.  But by the statute 4 Anne, ch. 16, the same provisions were made to apply to the defendant if he was "beyond seas," namely, that he might, on his return to England, be sued within the times limited by the statute.  And the word return in both these statutes was held to include alike the arrival in England of a foreigner who had never been there before, and of a citizen returning from an absence abroad.  *Duplien* v. *DeRoven*, 2 Vt. 540 ; *Strithorst* v. *Greame*, 2 W. Black. 723 ; *Williams* v. *Jones*, 13 East 448 ; *King* v. *Walker*, 1 W. Black. 286 ; *Lafonde* v. *Ruddock*, 24 E. L. & E. 239 ; *Buckmaboye* v. *Mattichund*, 32 E. L. & E. 84, which is a case in point.

Statutes of limitation have been passed in the several States of the United States, in many of which the term "beyond seas" has been retained, and it has been held that the term is here equivalent to "out of the State."  *Murray* v. *Baker*, 3 Wheat. 541 ; *Bank of Alexandria* v. *Dyer*, 14 Pet. 141.  So in most of the State courts. Ang. on Lim. 210, and cases cited.  It is so held in this State ; *Galusha* v. *Cobleigh*, 13 N. H. 79 ; though in Pennsylvania it is held to mean out of the limits of the United States.  *Ward* v. *Hallam*, 1 Yeates 329 ; *Thurston* v. *Davies*, 9 Serg. & R. 285.

The statutes of the States have included in almost every instance some provision that where persons are absent from the State when the cause of action accrued, or afterward, the statute shall not run during such absence, or until such persons return, or unless they leave property in the State ; yet it has been held almost uniformly that these words, absence, return, leaving property, &c., are not confined in their application to those who have once been inhabitants, but are equally applicable to those who have never before been in the State ; to foreigners as well as to citizens.  It has been so decided in Massachusetts.  *Bulger* v. *Roche*, 11 Pick. 138 ; *Whitney* v. *Goddard*, 20 Pick. 310 ; *Von Homert* v. *Porter*, 11 Met. 210 ; *Brigham* v. *Bigelow*, 12 Met. 270 ; *Putnam* v. *Dyke*, 13 Gray 535. So in New-York : *Ruggles* v. *Keeler*, 3 Johns. 263, and cases cited ; *Cole* v. *Jessup*, 2 Barb. 309 ; *Carpenter* v. *Wells*, 21 Barb. 593.  So in Vermont : *Dunning* v. *Chamberlain*, 6 Vt. 127 ; *Graves* v. *Weeks*, 19 Vt. 178.  And in Connecticut : *Hatch* v. *Spofford*, 24 Conn. 432.  And in Maine : *McMillan* v. *Wood*, 29 Me. 217 ; *Tribodeau* v. *Levasseur*, 36 Me. 362.  And in Rhode-Island : *Crocker* v. *Arey*, 3 R. I. 178.  So in Alabama : *State Bank* v. *Seawell*, 18 Ala. 616 ; *Thompson* v. *Odum*, 23 Ala. 480.  And in Arkansas : *Wakefield* v. *Smart*, 3 Eng. 488 ; *Field* v. *Dickinson*, 3 Pike 409. And in Mississippi ; *Estes* v. *Rawlin*, 5 How. 258.  And in Mis-

souri : *King* v. *Lane*, 7 Mo. 241 ; *Bedford* v. *Bradford*, 8 Mo. 233. And in Pennsylvania : *Mullen* v. *Ridgeway*, Addison 278. And in Ohio, until the Legislature, in 1830, enacted that contracts made by non-residents, and barred by the laws of the State where they were made, should be barred in Ohio. *North* v. *Wilson*, Wright 152.

In some of the States beside Ohio, we understand that the legislatures have interfered to limit the exception to the statute to residents or those who have once been residents ; but we have been unable to find any case where the courts have construed the general law, in the absence of express legislation, in accordance with the defendant's views, except in the States of New-Jersey and Texas, in the cases cited in the defendant's brief. It may be a proper matter of legislation, but we regard those decisions relied on by the defendant as in conflict with the great weight of authority, both in England and in America, upon that subject.

It was held in *Graves* v. *Strong*, in Vermont, that the tenth section of their statute of limitations, of 1797, providing that in case the defendant, at the time the cause of action accrued, was without the State, the suit might be commenced within six years after his return into the State, extends to a case where both parties are resident citizens of another State, and the debtor was in that State only for a temporary purpose at the time the writ was served ; and that such action would be sustained, although the cause of action might have been barred at the commencement of the suit, by the statute of limitations of the State of which both parties were then resident citizens.

To the same effect was the decision in Massachusetts, *Bulger* v. *Roche* ; and by the more recent case in that State, *Putnam* v. *Dyke*, it was held that the statute of limitations of that State was no bar to an action brought there on a debt contracted in Vermont more than forty years before. And both parties had lived in Vermont during that period of time, and of course the statute of limitations of Vermont could not be pleaded in Massachusetts.

*Ruggles* v. *Keeler* and *Carpenter* v. *Wells*, in New-York, are to the same effect ; and in Connecticut, the more recent case of *Hatch* v. *Spofford*, where the same positions were argued that are here taken by the defendant ; and where the statute, like our own, makes no provision for the absence of the plaintiff, decides that the exception in their statutes in favor of debtors who are without the State, is applicable where the cause of action arose in another State, within which both parties then resided, and so continued to reside until after such action was brought.

To be sure, the words used in the exception in the statute of Connecticut are not precisely the same as those used in the exception to our own, but the object to be attained was evidently the same. We have the proper rule of construction to apply to these statutes of limitation, laid down in Angell on Limitations 17, where, in speaking of the statute of James, as modified by that of Anne, it is said : " Where any difference appears between the provisions of that statute in respect to personal actions, and those of the American statutes of limitation, it is, it will be seen, more in words than

in substance — the end of one and all of them being one and the same. If the periods of limitation be different in different countries or States, and in different actions, yet the statutes are drawn with slight variations of phrase, and all being *in pari materia,* the object and intention being the same, they require a uniform construction. The American acts of limitations, as they relate to personal actions of every kind, are either an exact transcript of James, or a revision or modification of it; and that the mere change of phraseology in the revision of a statute before in force, will not work an alteration in the law previously declared, unless it indisputably appear that such was the intention of the legislature, has been expressly decided;" and he cites as authorities, *Cook* v. *Wood,* 1 McCord (S. C.) 141; *Murray* v. *East-India Co.,* 5 B. & Ald. 204; *Taylor* v. *Delancy,* 2 Caines Cas. Er. 143; *Yates' Case,* 4 Johns. 317, 359; *Matter of Brown,* 21 Wend. 316; *Theriat* v. *Hart,* 2 Hill 380. Now it would seem that the courts of New-Jersey, and of Texas, instead of following this reasonable rule of construction, have, by putting, if not a forced at least a fanciful construction upon the words of their statute, undertaken to make a broad distinction, where it seems to us there is no real difference.

We consider this question as already settled in this State. In *Sissons* v. *Bicknell,* 6 N. H. 558, *Richardson,* C. J., says: "It is argued that the statute embraces only inhabitants of this State who have gone abroad and left no property that could be attached. The statute speaks of their leaving property, which certainly gives some countenance to the supposition that the case of inhabitants leaving the State was in the immediate contemplation of those who made the act. But that circumstance is much too slight to sustain a construction so narrow as that for which the defendant's counsel contends." And it is expressly held in that case, that that section of the statute of limitations which provided that when the defendant has resided out of the State, and not left property within the State that might have been attached, the plaintiff shall have six years to commence his action, exclusive of the time the defendant has been thus out of the State, applies to defendants who have never been inhabitants of this State, as well as to those who have once been citizens. The same section of the same statute was held to apply to the defendant, in *Dow* v. *Sayward,* 12 N. H. 271, where the case finds that the defendant had never been an inhabitant of this State, but had always resided in the State of Maine, and did so at the time of the suit; and this holding is affirmed in S. C., 14 N. H. 9.

The expression in regard to leaving property, &c., which was contained in the statute then in force, implied that the person to whom it referred must once have been an inhabitant of this State, much more strongly than those do which are contained in our statute at the present time, if we were called upon to go into any critical examination of the derivation and exact meaning of words and phrases. Our present statute, after providing that all personal actions, with certain specified exceptions, shall be brought within six years after the cause of action accrued, and not afterward, farther provides, that " if the defendant, at the time the cause of

action accrued, or afterward, was absent from and residing out of the State, the time of such absence shall be excluded in the computation of the several times before limited for the commencement of personal actions." Rev. Stat., ch. 181, sec. 9; Comp. Stat. 461.

The counsel for the defendant claims that the words " absent from and residing out of the State" can be applied properly to those and those only who have formerly lived in the State, and had removed or absented themselves from it. No such construction can, however, be put on the words " residing out of the State," because that expression applies equally well to those who never lived in the State as to those who have. But the words " absent from," it is said, can only apply properly to those who have been residents. The word " absent," when used as a verb, as in the sentence " to absent himself," implies prior presence. So the word " absentee" means one who withdraws or has removed from his country, State, or home. But the word " absence," though primarily it may have supposed prior presence, yet, in common usage, simply means a state of being away from or at a distance from, not in company with. And the word " absent," when used as an adjective in common and ordinary use, simply means, not present, and refers only to the condition or situation of the person or thing spoken of at the time of speaking, without any allusion or reference to any prior situation or condition of the same person or thing; so that there is really nothing in the words used in our present statute that is more favorable to the construction claimed by the defendant, than that which has almost uniformly been given to similar statutes every where. But that is not all.

The doctrine contended for by the defendant would carry him too far. Suppose a farmer of New-Hampshire sells a thousand dollars' worth of provisions to a man in Boston, and takes his note. The debtor becomes embarrassed, or from some cause the creditor does not wish to go to Massachusetts to commence a suit until the six years have expired which will bar the action there. But during this time the debtor is careful not to come into this State; but after the expiration of six years he comes into New-Hampshire, and has property here liable to attachment, and the creditor brings his suit here. The defendant pleads the statute of limitations. The plaintiff replies that this statute does not apply, because the defendant, during all the time since the note was given, has been absent from and resided out of this State. The defendant rejoins that although he has resided in Massachusetts, as alleged, yet he has not been absent from New-Hampshire, because he never resided in this State. Now if the defendant's position in the case at bar be correct, that would be a good rejoinder, and that defendant would be discharged.

The statute was not intended to have any such effect. There can be no good reason why a citizen of this State should be barred in his action against a resident of another State, if he can find him in this State, who has not paid his debts, as he promised to do, and as it was his duty to do; and why he may not properly, if the statute of limitation be pleaded, reply, that he should not be barred

because the defendant has been absent from and residing out of this State; or why there should be any difference, in such a case, between a defendant who has always lived in Massachusetts and one who may have some time resided in this State, but has, years ago, removed to that State for a permanent residence. It was the duty of a debtor to go to his creditor and pay his debt, and the creditor should not be compelled to go to a foreign jurisdiction to seek his remedy, if he can find any proper way of pursuing it at home.

Our statute has no exception excluding from computation the time of absence of the plaintiff, nor does such a provision seem necessary, since the plaintiff's absence does not prevent him from bringing his suit at any time when he can find the defendant within our jurisdiction, or his property here; for he may sue here let his domicil be where it may. The statute of James and of Anne have no necessary connection with each other, but are independent and distinct. Where both the statute of James and of Anne are in force, the statute of limitations does not run when either party is absent. But where the statute like ours only provides for the absence of the defendant, there can be no reason why all should not be entitled to the benefit of his absence, who would be barred of their action by reason of his absence, and that would be as well the absent plaintiff as the one who was present. Where the plaintiff is a citizen of this State it makes no difference whether he be present or absent. His presence or his absence has nothing to do with the statute of limitations; whether that shall run against the claim, or not, depends entirely on the presence or absence of the defendant, and it is the same with the non-resident plaintiff.

Any foreigner who is not an alien enemy may sue and be sued in our courts, although neither plaintiff nor defendant were ever in the State before; and much more is this true of a plaintiff residing in a neighboring State, by reason of the provision of the constitution of the United States (art. 4, sec, 2), which provides "that the citizens of each State shall be entitled to all privileges and immunities of the citizens of the several States." Nor does the fact that the cause of action originated or accrued in Maine or Massachusetts affect the case. The action is transitory, following the debtor wherever he goes. It is elementary law that the creditor may pursue his debtor into and through every State and every country, and sue him wherever his person or his property may be found. *Hatch* v. *Spofford, supra,* and cases cited. *Debitum et contractus sunt nullius loci.* Broom Legal Max. 414, note; *March* v. *Eastern Railroad,* 40 N. H. 574, and authorities.

The objection that our courts will be crowded with suits upon stale claims from abroad, to the exclusion or interruption of their legitimate business, is purely imaginary. The fact that this question is now directly raised, as the defendant claims, for the first time in this State, is a sufficient answer to that objection. But however that may be, until our international law shall be changed, and especially until the constitution of the United States be altered, we must continue to yield to the citizens of other countries, and par-

ticularly to those of our sister States, what we are exacting from their courts in behalf of our own people. It is a liberty which may be abused, but still it can not be denied without endangering and embarrassing our commercial intercourse, and interfering with the constitutional rights of citizens of the republic.

The leading case in New-Jersey which holds a different doctrine is *Beardsley* v. *Southmayd*, 3 Green 170, and was the opinion of a divided court; and in a later case in that State, *Howe* v. *Lawrence*, 1 Zab. 740, the same court was divided — three of the eight judges being in favor of overruling the decision in *Beardsley* v. *Southmayd*, as being contrary both to reason and to authority; while the majority sustained that decision mainly upon the ground that the law, having been once settled, it was better to adhere to that decision than to change the rule, whatever may have been the merits of the original controversy. They do also, by way of inducement, allude to the danger of their courts being made " an avenue for the litigation of antiquated claims." But for the reasons we have stated we think that position had little weight.

*Nevins*, J., delivered the dissenting opinion of the minority, in which, speaking of their statute of limitations, he says: "there is no exception, as to non-resident plaintiffs, that they should not have the same rights to bring their actions within six years after the cause of action accrued, exclusive of the time that the defendant shall be a non-resident. There was no reason for such exception, nor would such exception have been sanctioned either by the reason of the case, the constitution of the country, or the law of comity between nations. The legislature never intended to place citizens of other States, when plaintiffs in our courts, upon a less favorable footing than our own citizens. If such had been their intention it would have been so expressed. The statute of limitations of no State has drawn a distinction between resident and non-resident plaintiffs to the prejudice of the latter. Where such distinction has been made, it has been in favor of non-resident plaintiffs. Such is the statute of Virginia, which permits a foreign creditor to bring his action at any time within three years after coming into the State, no matter where the action accrued (3 Cranch 174); and there is good reason for such a distinction, for a creditor is not bound to pursue his debtor to a foreign tribunal, though he may do so. It is the duty of the latter to seek out his creditor, and settle and adjust his claims.

In *Le Roy* v. *Crowninshield*, 2 Mason 151, *Story*, J., has discussed at length the principles arising from the statute of limitations, and remarks that there are some doctrines so well established that it would be a waste of time to dispute them. Among these, he says, are the following; "That remedies must be according to the place where the action is brought; that every nation gives to foreigners the same right to enforce their rights as it does its own citizens; that a remedy against a person may be maintained in a foreign forum, though barred in the place where the contract was made; that laws of one place have no extra territorial force except by the comity of nations.

Now it is not claimed that the statute of limitations of Massachusetts or of Maine have any force here, or that they can be pleaded here in bar of an action brought in our courts. Those statutes have no force or effect outside of the territorial limits of the States that enacted them respectively; and we have seen that the statute of limitations of this State does not bar this action on account of the absence of the defendant, of which this plaintiff has the same right to take the advantage that a citizen would have. If any change in our statute is needed, it is a proper subject for legislation. But care should be exercised, even then, that we should not deny to citizens of sister States the same rights as plaintiffs in our courts that they all accord to our citizens in their courts; and that no enactments be passed by which the citizens of the neighboring States shall not be held as defendants in our courts, when our citizens are held under circumstances precisely similar in all such neighboring States.

We believe that the authorities, both from the civil and the common law, concur in establishing the rule, that the nature, validity, construction and effect of contracts is to be determined by the law of the place where the contract is made or is to be performed; *lex loci contractus.* But that all the remedies for enforcing such contracts are regulated by the law of the place where such remedies are pursued; *lex fori;* and that ordinarily the statute of limitations of a State does not in any way attach itself to or affect the contract; it is no part of the *lex loci,* but affects and limits the remedy merely, and belongs purely to the *lex fori;* that it does not operate as a discharge of the contract, or as a defense against the contract itself, but is interposed as a bar to the maintenance of an action; it limits the time within which the remedy must be pursued or applied. *Andrews* v. *Herriott,* 4 Cow. 508, note a; 511, 514, 515, 530, and cases cited; *Graves* v. *Weeks,* 19 Vt. 178, and cases; *Nash* v. *Tupper,* 1 Caines 402; *Ruggles* v. *Keeler,* 3 Johns. 263; *Decouche* v. *Savetier,* 3 Johns. Ch. 190; *Hawkins* v. *Barney,* 5 Pet. 457; *McClung* v. *Silliman,* 3 Pet. 270; *McElmoyle* v. *Cohen,* 13 Pet. 312; *Richards* v. *Rickley,* 13 S. & R. 395; *Egberts* v. *Dibble,* 3 McLean 86; *Higgins* v. *Scott,* 2 B. & Ad. 413; *Le Roy* v. *Crowninshield,* supra; *British Linen Co.* v. *Drummond,* 10 B. & C. 903; with the cases in Massachusetts and New-York already cited.

It follows, therefore, and the above decisions fully sustain the position, that the statute of limitations is local in its operation, and can only be pleaded as a bar to an action brought in the State where the statute is in force; and that the statute of limitations of any other State can not be pleaded in this State, and can not in any way affect an action brought here. A case might be supposed where a statute of limitations would have a different effect. Story (Confl. Laws 487) alludes to this distinction. He says: "Suppose the statutes of limitation, or prescription of a particular country, do not only extinguish the right of action, but the claim or title itself, *ipso facto,* and declare it a nullity, after the lapse of the prescribed period, and the parties are resident within that jurisdiction, during the whole of that period, so that it has actually and fully operated

upon the case. Under such circumstances the question might properly arise whether such statute of limitation or prescription may not afterward be set up in any other country to which the parties may remove, by way of extinguishment or transfer of the claim or title." Admitting that this might be so, still the suggestion ·is predicated upon the admission, that if the statute only bars the remedy, as is the case with ours, and those of all the States, so far as we know, then it could have no force or effect on the contract, in any other jurisdiction; and our statute can only apply to the parties after they are in this jurisdiction, and to the remedy after it is ·sought to be applied in this State. Therefore the demurrer is sustained and

*The rejoinder overruled.*