PEOPLE, *ex rel.* RYAN, *v.* VAN ANDEN.

1. MUNICIPAL OFFICERS — TENURE — CONSTRUCTION OF CHARTER.
   Act No. 374, Local Acts 1897, revising the charter of Grand
   Rapids, provides (title 2, § 6) for the appointment of a build_
   ing inspector on the first Monday in May after the passage of
   the act, and each year thereafter, who shall hold his office
   for one year. Title 12, § 33, provides that all the officers of
   the city, in office at the passage of the act, who were ap-
   pointed for a longer period than till the first Monday in May
   thereafter, shall continue in office until the term for which
   they were appointed expires by limitation, "except as herein
   otherwise provided." *Held*, that the office of building in-
   spector was within the exception.

2. SAME — PRESIDENT OF COUNCIL — APPOINTMENTS IN MAYOR'S
   ABSENCE.
   Where a charter provides for nominations to city offices by the
   mayor, subject to the confirmation of the common council,
   and confers upon the president of the council the right to
   discharge the municipal duties of the mayor during the
   latter's absence, a nomination to office by the president of
   the council, made and confirmed during the mayor's absence
   from the State, is valid.

Case made from Kent; Adsit, J. Submitted April 8,
1898. Decided April 19, 1898.

*Quo warranto* proceedings by the people, on the rela-
tion of William J. Ryan, against Charles H. Van Anden,
to try the title to the office of inspector of buildings of the
city of Grand Rapids. Relator had judgment, and respon-
dent assigns error. Affirmed.

*Charles W. McGill*, for appellant.

*Taylor & Eddy*, for appellee.

HOOKER, J. An information in the nature of a *quo*

*warranto* was filed in the circuit court to try the respondent's title to the office of inspector of buildings in the city of Grand Rapids. The record shows that on June 15, 1896, the mayor of Grand Rapids "nominated and appointed" the respondent to the office of inspector of buildings for the term ending the first Monday in May, 1898, subject to confirmation by the council, which was duly made. This was under a provision of the city charter which made the term of said office the period of two years. In the winter of 1897 the charter was amended (Act No. 374, Local Acts 1897), and it is claimed that the term was reduced to one year, and that it had the effect to terminate respondent's right to the office on May 1, 1897. The provisions supposed to affect the question are the following:

"The mayor shall, on the first Monday of May after the passage of this act, or within a reasonable time thereafter, and on the first Monday in May of every succeeding year, or within a reasonable time thereafter, nominate a building inspector, who shall hold his office for one year, and until his successor is appointed and qualified.   *   *   *   All such nominations shall be subject to confirmation by a majority vote of all the aldermen-elect of the common council." Title 2, § 6.

"All the officers of the city who may be in office at the passage of this act shall continue to exercise the duties of their respective offices until the first Monday in May thereafter, and until their successors shall have been elected or appointed and duly qualified: *Provided,* they shall not have been elected or appointed for a longer period, but, if they were elected or appointed for a longer period, they shall continue to exercise the duties of their respective offices until the term for which they were elected or appointed shall expire by limitation, except as herein otherwise provided." Title 12, § 33.

This revision of the charter was given immediate effect. On May 3, 1897, the mayor nominated the respondent as inspector of buildings for the period of one year after that date, and until a successor should he nominated, confirmed, and qualified. The council refused to confirm this nomina-

tion, and again, on June 1st, the respondent was nominated, but failed of confirmation. Subsequently, and while the mayor was absent from the State, the president of the council, while acting mayor, nominated the relator, and his nomination was confirmed by the council at a regular meeting. On the same evening, after the council adjourned, the president of the council filed his approval of said confirmation.

The questions raised by counsel are: *First.* Did the revision of the charter change the term of office of the respondent? *Second.* It so, had the president of the council the authority to nominate the relator? The power of the legislature to shorten respondent's term of office is not questioned, and it is conceded that section 6, tit. 2, hereinbefore quoted, would have that effect but for the provision of section 33, tit. 12, which is said to continue him in office until the expiration of the time for which he was appointed; and it is urged that this provision would be meaningless unless given that effect. It is doubtless true that this language is meaningless unless it has the effect to relieve one or more of the officers of the city from the provisions of section 6; but, on the other hand, the words "except as herein otherwise provided" are meaningless unless they render the preceding words of said section 33 inapplicable to one or more officers whose terms would thereby be preserved. Section 33 is a saving clause as to some offices, and would be as to all but for the words "except as herein otherwise provided." Counsel for the relator call attention to certain officers whose terms were within the saving clause, and we think the respondent's office was clearly within the exception, as section 6 plainly requires that his successor should be appointed in May, 1897.

Section 2, tit. 3, of the revised charter, provides:

"The common council shall, on the first Monday in May in each year, or within ten days thereafter, elect by ballot one of their number, who shall be known as president of the council, and who shall possess the same powers

and perform and discharge the municipal duties of the mayor, during the absence, inability, death, resignation, or removal of the mayor."

We are of the opinion that this confers upon the president all of the power and authority of the mayor during the period of his absence from the State.   In this case the mayor was absent from the State for upwards of two weeks, and had announced an intention to be absent three weeks. He did not, in fact, return until after the confirmation and approval.   Whether or not the approval of the confirmation was necessary we need not discuss, because, if necessary, it was seasonably announced.

The judgment is affirmed.

The other Justices concurred.