CASE 73—AN ACTION BY J. L. WATKINS AGAINST PAT MOONEY, INVOLVING THE TITLE TO THE OFFICE OF MEMBER OF THE BOARD OF POLICE AND FIRE COMMISSIONERS OF THE CITY OF LEXINGTON.— JAN. 30.

# Watkins v. Mooney.

APPEAL FROM FAYETTE CIRCUIT COURT.

FROM A JUDGMENT DISMISSING PLAINTIFF'S PETITION, HE APPEALS. REVERSED.

MUNICIPAL CORPORATIONS—MAYOR—ABSENCE FROM CITY—POWERS OF PRESIDENT OF BOARD OF ALDERMEN—APPOINTMENT TO FILL VACANCY IN POLICE DEPARTMENT—CONFIRMATION BY BOARD OF ALDERMEN—"ABSENCE" DEFINED.

Held: 1. Kentucky Statutes, section 3204, providing that, in the absence of the mayor from a city, the president of the board of aldermen shall act as mayor, does not authorize the president of the board to appoint a member of the board of police and fire commissioners created by section 3137 where the mayor was absent for about a day at another city about twenty-five miles distant; the cities being connected by railroad and telegraph and telephone service, and where there was no emergency requiring the president of the board to act. The word "absence," as used in this statute, is not merely a physical absence of the mayor from the city, but such an absence as renders him incapable for the time being of performing the act that may be in question, which act must present such a necessity for immediate attention as to require it to be *then executed.*

Watkins v. Mooney.

2. Kentucky Statutes, section 3137, creates a board of police and fire commissioners, for cities of the second class, of four members, with the mayor, ex officio, chairman, and directs that the four commissioners shall be appointed by the mayor, subject to the approval of the board of aldermen, and the mayor is authorized to fill all vacancies in the board. Section 3108 expressly confers on the mayor the power to fill all vacancies in office, unless otherwise provided. HELD, that a mayor's appointment of a member of the board of police and fire commissioners to fill a vacancy need not be confirmed by the board of aldermen.

BRECKINRIDGE & SHELBY AND ALLEN & DUNCAN, FOR APPELLANT.

J. Soule Smith having resigned as a member of the board of police and fire commissioners of the city of Lexington, the mayor appointed the appellant, J. L. Watkins to fill the vacancy, who took the oath of office and entered upon his duties. A few days thereafter, the mayor went to the city of Frankfort, twenty-five miles distance, which is connected with the city of Lexington by train and by telephone and telegraph, and was gone about twenty-four hours. During this absence, certain members of the board of aldermen in pursuance of a prearrangement had the president of the board of aldermen, assuming to act as mayor, to call the general council together in special session at nine o'clock in the morning, to whom he reported the appointment of Watkins, previously made by the mayor, which appointment the board rejected, and the president of the said board then appointed the appellee, Mooney, to said office, which appointment the said board confirmed and then adjourned.

When the mayor returned from Frankfort he repudiated everything that had been done in his absence, as illegal, refused to recognize the change that had been made and continued to recognize Watkins as a member of the board of police and fire commissioners.

The appellant, Watkins, has filed his petition in the Fayette circuit court setting up these facts and asking that he be adjudged to be entitled to said office with a prayer for an injunction to which petition a demurrer was sustained by the lower court and his petition dismissed, from which judgment this appeal is prosecuted.

Our contention is:

1. That the president of the board of aldermen can never act as mayor unless the public interests require and make it the duty of the mayor to act then, and he is unable to act; that when such an occasion is presented the right of the president of

the board of aldermen to act is limited to the necessities of the particular emergency; that his right to act does not draw to him all of the power of the mayor.

2. That the word "absence" used in the statute does not mean mere physical absence, but such absence as will prevent the mayor from performing an urgent duty which the public interests require should not be delayed.

3. Assuming for the sake of argument that the absence referred to means physical absence, the plaintiff could not be ousted from his office in the manner attempted.

4. Assuming that the plaintiff is an officer *de facto*, and that there exists a real and honest contention concerning the title to the office, is he not entitled to be protected in his possession of the office by the writ of injunction?

### REFERENCES AND CITATIONS.

Kentucky Statutes, secs. 3203, 3204, 3049, 3137, 3108; High on Injunctions, 3d ed., secs. 1312, 1315 and cases cited; Mechem on Public Officers, sec. 994, and cases cited; Beach on Modern Equity Jurisprudence, sec. 671, and cases cited; Steiglen v. Beach, Circuit Judge, (Mich. 1901), 87 N. W., 449; Rhodes v. Driver, (Ark. Nov., 1901), 65 S. W., 106; People, *ex rel.* Tennant v. Parker, 3 Nebraska, 409; s. c., 19 Am. Rep., 634; State *ex rel.* Warmouth v. Graham, 26 La. Ann., 568; s. c., 21 Am. Rep., 551; People v. La Combe (N. Y.) 1 N. E., 599; Mayor of Detroit v. Moran, (Mich.) 9 N. W., 252; O'Malley v. McGinn, (Wis.) 10 N. W., 515; State v. Byrne, (Wis.) 73 N. W., 320; Lynde v. Winnebago County, 16 Wall., 6; *In re* Cleveland v. Mayor, (N. J.) 18 alt., 67; People v. Van Anden, (Mich.) 74 N. W., 1009; Bernard v. Taggart, (N. H.) 25 L. R. A., 613.

MORTON, DARNALL & WILSON, WEBB & FARRELL, AND J. D. & G. R. HUNT, FOR APPELLEE.

### SUMMARY.

1. The motives of a co-ordinate branch of government will not be inquired into by the judiciary, where the power exercised or the act done comes within the domain of its delegated or authorized powers or acts. Taylor v. Beckham, 21 Ky. Law Rep., 1743.

2. Where a quorum is present, a majority of a quorum can do any legal act, even though other persons present take no part. Wheeler v. Commonwealth, 98 Ky., p. 63; Launtz v. The People, *ex rel.* Sullivan, 113 Ill., 137; State, *ex rel.* Shinnich v. Green, 37 Ohio St., 227; Rushville Gas Company v. City of Rushville,

Watkins v. Mooney.

23 N. E. R., 72; State of Ohio, *ex rel.* Cline v. Wilkesville Township, 20 Ohio St., 288.

· 3. Under the charter of cities of the second class the approval of the board of aldermen is necessary before the appointment of a person to the position of a member of the board of police and fire commissioners is complete. Sec. 3108, Kentucky Statutes; sec. 3137, Kentucky Statutes.

4. Under the charter of the city of Lexington, the president of the board of aldermen has the right to act as mayor during the absence or disability of the mayor, and has the right to perform every act, which the mayor could have performed, if present. Secs. 3204 and 3203 of Kentucky Statutes; People, *ex rel.* Tennant v. Parker, 3 Neb., 409; Warmouth v. Graham, 26 La., 568, Mayor of Detroit v. Moran, 9 N. W., 252; O'Malley v. McGinn, 10 N. W., 517; State v. Byrne, 73 N. W., 320; People v. Van Anden, 74 N. W., 1009; Lynde v. Winnebago County, 16 Wall., 6; *In re* Cleveland, 18 Atl. Rep., 67.

5. The injunction was properly refused by the court.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

This suit involves the title to the office of member of the board of police and fire commissioners of the city of Lexington, appellant and appellee each claiming to be the rightful incumbent. Lexington is a city of the second class. The statute providing a system of government for these cities creates a board called the "Board of Police and Fire Commissioners," which is composed of the mayor of the city, *ex officio,* the chairman of the board, and four other members appointed by the mayor. This board is created by section 3137, Kentucky Statutes, which section is as follows: "The mayor, subject to the approval of the board of alderman, shall appoint four citizens and freeholders of the city, who shall have been electors of the city for five years preceding their appointment, and who shall not be less than thirty years of age, and not related to the mayor by blood or marriage, who, together with the mayor, shall compose a board of police and fire commissioners. The mayor shall be *ex officio* chairman of said board. Said

commissioners shall be appointed for a term of one, two, three and four years, respectively, upon the taking effect of this act; and every year thereafter, as the terms of office of the said commissioners shall expire, respectively, there shall be one commissioner appointed for a term of four years, and the mayor shall fill all vacancies that may occur in said board. The salaries of the commissioners may be fixed by the general council. The city clerk shall act as clerk of said board." The four members provided for by the section were originally appointed by the mayor and confirmed by the board of aldermen. One of these members was J. Soule Smith. Before this controversy arose, he resigned, thus creating a vacancy in the board. Henry T. Duncan was then, and is yet, the mayor of Lexington. After the vacancy above named occurred, the mayor appointed appellant, J. L. Watkins, to fill it, and he accepted it. Whether this appointment was communicated by the mayor to the board of aldermen, and by that body confirmed and approved, does not appear from the record, though it is assumed in argument that it was not so reported or confirmed. Shortly thereafter, and on the 21st day of January, 1902, the mayor had occasion to come to Frankfort, where the State Legislature was in session, for the purpose of attending to business before that body, or some committee, affecting the interest of cities of the second class. He left Lexington in the afternoon of the 21st, and did not return until the following afternoon. Lexington is about 25 miles distant from Frankfort, connected by railroad, and between these two cities several passenger trains are run each way each day. The cities are also connected by telegraph and telephone service, affording opportunities for constant communication by these means. Section 3204, Kentucky Statutes, reads as follows:

"In the event of the absence or disability of the mayor, the president of the board of aldermen shall act as mayor, and in event of the absence or disability of both the mayor and the president of the board of aldermen, the president of the board of councilmen shall act as mayor." W. H. McCorkle was the president of the board of aldermen. After the mayor's departure for Frankfort, McCorkle issued notices convening the board of aldermen in extraordinary session at an early hour on the morning of the 22d, "to receive a communication from the mayor." A quorum of the board met as called, whereupon McCorkle, affecting to act as mayor *pro tempore*, communicated to that body the appointment of appellant, Watkins, previously made by Mayor Duncan, and submitted this appointment to the board as a nomination for their approval and confirmation. The board of aldermen rejected the appointment, whereupon President McCorkle immediately transmitted to the board the nomination of appellee, Mooney, to fill the vacancy caused by the resignation of Smith, which nomination was confirmed and approved by the board. It is charged that this action by McCorkle and his associate members of the board of aldermen was the result of a conspiracy upon their part, and of others acting with them, to defeat the mayor's right of appointment, and to install such members of the board of police and fire commissioners as would be unacceptable to him, and to deprive him of his legal powers pertaining to his office.

The facts above stated are gathered from the petition of appellant, Watkins, filed against appellee, Mooney, in the Fayette circuit court, to prevent the exercise by Mooney of the duties and privileges of the office which they were each claiming. The circuit court sustained a demurrer to this petition, and dismissed the action, wherefore this ap-

peal, which presents two questions of law: (1) Was the mayor absent, within the meaning and contemplation of the statute? (2) Does the statute require appointments. made by the mayor to fill the vacancies in the board of police and fire commissioners of cities of the second class to be confirmed by the board of aldermen before they become effective?

The court does not regard the allegation of the alleged conspiracy as one at all material in this case. In our opinion, the question is purely one of power. One department of government will not undertake to inquire into, and can not ordinarily investigate, the motives prompting members. of a distinctly different department in the exercise of power conferred upon them by law.

It is the contention of appellee that the word "absence," as employed in this statute, has a well defined and understood meaning; that it should be given its strict, literal meaning—to be away from or to be withdrawn from a place; and that it has reference solely to a physical absence of the subject. Many words of common use in our language have two or more meanings. It is not infrequent that a word having one meaning in its ordinary employment has. a materially different or modified meaning in its legal use. This word "absence" is a fair example. It has been held that one may be absent, though actually present, as where a judge, though on the bench, does not sit in the cause. He is there taken as absent in contemplation of law. Bingham v. Cabbot, 3 Dall., 19, 1 L. Ed., 491; Byrne v. Arnold, 24 New Br., 161. It has also been held to mean "not present." Paine v. Drew, 44 N. H., 306. It has been held, too, as not meaning "out of the State only." James v. Townsend, 104 Mass., 367. "Absence" and "disability" are words which, from their use

Watkins v. Mooney.

in statutes, may have two different meanings. They are quite frequently found in some form in the statutes of this and other States, as well as in the Constitutions of many of the States. The Legislature has not defined the sense in which either of the words is to be construed; leaving their construction and application to be gathered from the intent of the act or section in which they may be found, by the light of its subject-matter and evident purpose. President Arthur, in his first message to Congress, clearly and ably set forth the ambiguity of the term "disability" as used in the Constitution of the United States, providing that "in case of the removal of the president from office, or of his death, resignation or disability to discharge the powers and duties of said office, the same shall devolve upon the vice-president," etc. Yet "disability" is a word of scarcely less ambiguity, as generally used in common parlance, than "absence." In some States their statutes provide that the chairman of the board of aldermen, or other officer holding the position of vice-mayor, shall act in case of the absence of the mayor from the city. Such, for example, are the cases of O'Malley v. McGinn (Wis.) 10 N. W., 515; In re Cleveland (N. J. Sup.) 18 Atl., 67. In other cases cited it was shown that the mayor was absent from the State, and the court found that he could not perform the duty which the vice mayor was assuming to do. Such are State v. Byrne (Wis.), 73 N. W., 320, and People v. Van Anden (Mich.), 74 N. W., 1009. In the case first named, the facts do not show, in the opinion, how far the mayor was from the city, nor how long he had been away, nor the particular urgency of the action of the vice mayor. In the last-named case the mayor was shown to have been absent from the State for two weeks, and as having expressed a purpose, when he left, of being absent for three

weeks. It is a difficult task, if not an impossible one, to lay down a rule that could apply to all cases, defining the meaning of the word "absence," as used in the statute quoted above, and similar ones. We do not lay any particular stress upon the fact that the mayor was not absent from the State, though in one of the cases cited the court seems to have done so. For example, the mayor of Lexington, if at Hickman, Ky., would be further removed from his city, and therefore less capable of being in touch with its governmental affairs, than if he were at Cincinnati. So the mayor of Newport or Covington, cities of the second class, also would be absent from the State, and, of course, from their respective cities, if across the river, in Cincinnati—a matter of 10 minutes' journey. It may be that the courts, until the Legislature has spoken more definitely as to its meaning upon this subject, might have to determine each case largely upon the particular facts presented. We think that the soundest reasoning, under the authorities cited and examined, gives the word "absence" the meaning of that absence which would make it impossible for the official to perform the act in question. Where the mayor is to preside personally at a meeting of a board of which he is *ex officio* a member, absence in that case would probably mean an absence from the place of meeting. But for the matter of making an appointment, signing a contract which he was permitted by law to sign for the city, or to issue a proclamation, or to issue a notice citing an official to appear for a violation of the statute, which he is authorized to try, the mayor might perform any of these acts though beyond the corporate limits of the city. Would the chairman of the board of aldermen be authorized, if the mayor should happen to go out to the waterworks, near Lexington, and in which his city is interested,

Watkins v. Mooney.

as it supplies its citizens with water necessary for their comfort, health and protection, to take advantage of such an absence to disarrange and confuse his policy of government? There can be but little doubt that he should not presume to act in a case of such absence, except the emergency was such as to demand that the official act be then done. In discussing a somewhat similar provision of law found in the Constitution of Louisiana, the supreme court of that State, in the case of Louisiana v. Graham, 26 La. Ann., 568, 21 Am. Rep., 551, had under consideration the meaning of the term "absence from the State," as used by the Constitution. In that case the governor had gone beyond the State lines, to Pass Christian, a few hours' run from the capital of Louisiana. Said the court: "How is the absence of the governor to be ascertained? It is manifest that there ought to be some certain proof, accessible to the public, from which they may with certainty derive the knowledge as to who is authorized to act as governor of the State. As the law makes no provision for the mode in which the governor shall manifest to the public his absence from the State, it necessarily is left to his discretion, subject to his responsibility to the people. If the interests of the State should suffer in consequence of his prolonged absence, he would be amenable to public sentiment and to the control of the impeaching power of the State. . . . We do not think that it was ever contemplated that the movements of the governor should be watched, with the view that the lieutenant governor, or speaker of the house of representatives, should slip into his seat the moment he stepped across the borders of the State." To the same effect, see People v. Parker, 3 Neb., 409; 19 Am. Rep., 634. To adopt a thought so forcibly presented in the last named case, when we reflect upon the

possible consequences of such construction of the statute, and upon the disgraceful tricks, strifes and exhibitions which might be entailed upon the people of the community, we hesitate and cast about for a more salutary rule than to adopt the suggestion of appellee that the mere physical absence is the one contemplated—for one which, while it will insure the efficient administration of the affairs of the city government during the brief, temporary absence of the executive, will at the same time protect that department of the government against unnecessary and ill-advised intrusion. We have therefore concluded that the absence contemplated by the Legislature in the employment of that word in the section under discussion, is not merely a physical absence of the mayor from the city, but is such an absence as renders him incapable for the time being of performing the act that may be in question, which act must present such a necessity for immediate attention as to require it to be then executed. In the case at bar there was no such urgency, and no emergency apparent for the president of the board of aldermen to assume the duties of mayor. Mayor of Detroit v. Moran (Mich.), 9 N. W., 252; Lynde v. Winnebago Co., 16 Wall., 6, 21 L. Ed., 272; Attorney General v. Taggart (N. H.), 29 Atl., 1027, 25 L. R. A., 613.

2. It is insisted for the plaintiff that the appointment of members of the board to fill vacancies must be confirmed by the board of aldermen as original appointments must be. It is argued (and this we conceive to be the main argument for the appellee in this behalf) that there is no apparent reason, and in fact none, why the Legislature should require the mayor's appointees, original and for full terms, always to be confirmed by the board of aldermen, and yet allow him to fill vacancies in the same board without such

confirmation. The argument seems to us to be almost ir-
resistible when presented to that body who make the
laws. But the consequences are not so much to be regard-
ed, in the construction of the statutes, as the language
employed, where the language is unambiguous. In fact,
as long as the language of the statute is not ambiguous,
the courts have no discretion as to the meaning they will
give to it. Says Suth. Stat. Const., section 237: "It is,
beyond question, the duty of courts, in construing statutes,
to give effect to the intent of the lawmaking power, and
seek for that intent in every legitimate way. But . . .
first of all, in the words and language employed; and if
the words are free from ambiguity and doubt, and express
plainly, clearly, and distinctly the sense of the framers of
the instrument, there is no occasion to resort to other
means of interpretation. It is not allowable to interpret
what has no need of interpretation." Any other course
would be extremely mischievous and dangerous. It
is not for the judiciary to make laws. If they
should, under the guise of interpretation, give to plain,
unambiguous language used by the Legislature in express-
ing its intention a meaning nowise warranted by the lan-
guage employed, it would practically be to constitute the
courts not only the construers of the law, but its makers.
The meaning of the language of the section quoted is ab-
solutely clear, is entirely free from ambiguity, is as plain
and simple as any similar number of words in common use
in the English language. We can find no warrant to hunt
beyond their common, everyday use for a latent meaning
supposedly in the minds of the Legislature. Furthermore,
the statute (section 3108) expressly confers upon the mayor
the power to fill all vacancies in office unless it was other-

wise provided in that act. We find no provision otherwise, nor can we see why the Legislature should confer the power upon the mayor to fill vacancies in more important positions than these are, without the confirmation of the board of aldermen, and yet require the confirmation in this particular instance. In any event, as to the wisdom or folly of such a provision, it is a matter beyond the control of the judiciary. A distinction is obviously intended to be made between original appointments of members of the board, and appointments to fill vacancies; otherwise there is no sense or meaning in the provision directing and authorizing the mayor to fill all vacancies. If the Legislature had intended that appointments to fill vacancies should be submitted for confirmation to the board of aldermen, it would doubtless have put in after the word "mayor," as it expressly did when providing for the original appointment, "subject to the approval of the board of aldermen."

Whether the injunction prayed for was or was not a proper incident of appellant's claim and suit, yet the facts stated in the petition were such as prevented a cause of action against appellee, and the demurrer thereto should have been overruled.

The judgment dismissing the petition is reversed, and cause remanded, with directions to overrule the demurrer, and for further proceedings not inconsistent herewith.