Washburn, J.
On the 14th day of December, 1909, David S. Troxel was the mayor of the city of Elyria and F. N. Smith was the president of council of said city. On that day an ordinance fixing the salary of the incoming mayor, solicitor, couneilmen and other officers of the city was passed by the council after many long and contentious meetings. On the next morning the clerk of the council, following the usual custom, notified,the mayor of the passage of said ordinance and stated to him that it was ready for his signature. The mayor was then in the city hall, but was not in the clerk’s office where the ordinance was kept. The mayor replied that the council having taken its time in passing said ordinance, he would take time to consider the same.
The ordinance was not delivered into his possession, but its contents was a matter of public notoriety. The mayor was in town during that day, December 15, but did not take actual possession of said ordinance. On the next day, the 16th, he was in town until about 11 o’clock, and at that hour he left the city temporarily, going to Cleveland, and returning that evening. During his brief absence' from the city the president of council was called to the city hall, and the ordinance was presented to him, and he approved and signed the same as acting mayor, and said ordinance was caused to be published in the manner provided by law for the publication of valid ordinances of a general nature.
On December 21, 1909, the mayor, claiming that the ordinance had been presented to him on the 15th, and having taken possession of it after it was signed by said president of council as acting mayor, sent a communication to the city council which was then in session, in which he disapproved and vetoed said ordinance and returned it to the council with his objections thereto.
The excuse for this conflict of authority was the desire of the interested parties to have said ordinance approved, so that it might be published legally and go into effect before the incoming officials whose salaries were raised by it would take office; and the claimed reason for the mayor’s delay was to prevent, without his disapproving the same, said ordinance going into effect in *627 time to give the incoming officials the benefit of the raise in salary.
The city solicitor, being requested by a tax-payer, brought this action tó enjoin the payment of salaries under said ordinance and, the payment of the expenses of publishing said ordinance out of the moneys or funds of the city, and after filing said suit the city solicitor made known to the court that he was beneficially interested in said ordinance, and requested the court to appoint a disinterested attorney to prosecute the action, which was done, and P. H. Boynton, Esq., was appointed by the court.
The legality of the ordinance in question depends upon the construction that is to be given to Sections 125 and 132 of the municipal code. So far as this case is concerned, Section 125 (Sec. 4234, General Code) provides:
“Every ordinance or resolution of council shall, before it goes into effect, be presented to the mayor for approval. The mayor, if he approves the same shall sign it, and return it forthwith to council; but if he do not approve it, he shall, within ten days after its passage or adoption, return the same with his objections to council, or, if council is not in session, return it to the next regular meeting thereof, which objections council shall cause to be entered upon its journal. ”
So far as it bears upon this question Section 132 (See. 4273, General Code) provides:
“When the mayor is absent from the city, or is unable for any cause to perform his duties, the president of council shall be the acting mayor.”
It will be noticed that the law provides that the ordinance shall be presented to the mayor for approval, and it also gives him ten days within which to return the ordinance if he does not approve it.
The only issue of fact made by the pleadings is as to whether or not this ordinance was presented to the mayor, the mayor’s claim being that it was presented to him in accordance with the prevailing custom of presenting ordinances to him; while the claim of the defense is that what was done did not amount to a presentation to the mayor, and that not having been presented to- *628 the mayor, it could legally be- presented to the president of council as acting mayor in the absence of the mayor from the city.
There are certáin authorities which hold that the presentation required is a physical presentation, but our Supreme Court in a recent case involving the question of the presentation to the governor of bills passed by the Legislature strongly intimated that actual physical presentation was not necessary (77 O. S., 182). Chief Justice Shauek, in the decision, says:
‘ ‘ It seems necessary to consider the purpose for which presentation is required, for it will be safe to assume that the presentation is sufficient if appropriate to that purpose.”
Later in the opinion Judge Shauek states-:
“The object of the requirement of presentation obviously is to afford to the governor an opportunity for the considerate exercise of the discretion which is thus vested in him. To say that the object is to enable him to so exercise that discretion, is manifestly inaccurate. ’ ’
That ease was one where owing to the extreme illness of the governor it was impossible to make a physical presentation of the bill, but the record shows that the bill was left in the governor’s office and presented to him, and the real decision of the case was that that record so made in the governor’s office being author-, ized by law could not be contradicted.
But in the ease at bar it is not necessary to determine whether or not the facts show a legal presentation of this ordinance to the mayor. It is sufficient to say that the law is- mandatory requiring a presentation, and the facts show that both before and after the president of council took action there was ample opportunity for a proper presentation of the ordinance to the may- or. Absence of compliance with the mandatory terms of the statute, without just reason or excuse, will not justify the later presentation of the ordinance to the president of council, against the wishes of the mayor, during the mayor’s brief temporary absence from the city. It is not within the power of the clerk of the council or other official to determine to whom an ordinance shall be presented. Where it can be presented to the mayor the *629 statute requires that it be done. If the ordinance in this case was presented to the mayor, then he had the full period given him by law for the considerate exercise of the discretion which is vested in him by law, and, of course, if properly presented to him it could not thereafter while he was considering the same be legally presented to the president of council as acting mayor. So that whether properly presented to the mayor or not, the subsequent approval of the ordinance by the president of council as acting mayor was without authority and of no force ,or effect in law, and such ordinance did not become a law by such unauthorized approval. In other words, if the ordinance was not properly presented to the mayor, it ought to have been so presented, and he could not be deprived of his right of veto by any official negligence; and if it was properly presented to the mayor, he has vetoed it, so that in neither event is the ordinance a valid ordinance.
Enough has been said to dispose of this case. But there is. another question raised in the case which is of public importance and supplies an additional ground upon which the action of the president of council in approving the ordinance was unwarranted. The statute provides: “When the mayor is absent from the city or is unable for any cause to perform his duties, the president of council shall be the acting mayor.”
What did the Legislature mean by this provision of the statute ? Did it mean, as has been held by some courts in reference to similar statutes, that the mere fact that the mayor was temporarily out of the city, when an ordinance was approved by the acting mayor, render that a valid ordinance? (10 N. W., 515); or did the Legislature mean that if the absence from the city of the mayor rendered him unable to perform his duty in reference to the ordinance, that then and then only could the acting mayor legally sign the ordinance? (71 S. W., 622). There are quite a number of authorities sustaining each of these propositions, but as there are no authorities in Ohio, the court is free to adopt that construction which it feels is sustained by the better reasoning.
In some of the cases where the mere absence of the mayor was held to authorize the acting mayor to approve an ordinance, the *630 law specifically provided that when the mayor was- ont of the city the acting mayor conld exercise all the powers and discharge all the duties of the mayor. No such a provision is found in the Ohio law. In Ohio, all that the law provides is that under certain circumstances the president of council shall be the acting mayor,. without in any way defining his duties and powers. Very few of the cases above referred to show a situation where the mayor was able and. willing to perform his duties, except for his temporary .absence and where he did in due time attempt to perform his duty that had been performed by the acting mayor in his absence, and such cases sustain the construction which I place upon-the Ohio statute.
Giving due weight to all of the authorities that have been cited, it seems to me that it can be said of the Ohio statute that it does not provide for two mayors. It provides for one mayor and an “acting” mayor, a certain designated person to act for the mayor and in his stead when he is unable to perform his duties, not to act independently and in spite of him and against his wishes when he is perfectly able and willing to perform his public duties. The president of council becomes acting mayor only “when the mayor is absent from the city or is unable for any cause to perform his duties.” The only possible object of such a provision was that the public interests should not suffer by reason of the inability of the mayor to perform his duties. Mere temporary absence does not render him unable to perform his duties, unless it is necessary that those duties be performed during his absence.
In my judgment it was not intended by the Legislature to authorize the president of council in the temporary absence of the mayor from the city to perform any act as acting mayor except such necessary acts as the public good demanded or required, at least as against and in derogation of the rights and wishes of the mayor. In other words, an act which could just as well have been performed by the mayor upon his return to the city after a temporary absence without detriment to the public service can not be performed by the president of council as acting mayor against the wishes and in usurpation of the authority of the mayor. If this were not so, during a few hours’ *631 absence from the city of the mayor, the president of council could discharge the directors of public service and safety, appoint others and obligate the city, thereby reversing the policies of the executive head of the city who, it may be, was elected to carry out the very policies that could thus be changed. If the acting mayor has .the authority claimed by defendants he could create a chaotic condition in public affairs that would be nothing less than appalling. The prompt aversion of the legal mind from a construction of a statute which would give' to the acting mayor such authority is justified by a contemplation of the consequences which would follow.
In this case the- ordinance could have been signed just as well on December 17, when the mayor was in the city, as on December 16, when he was absent for a few hours. Signing the ordinance on December 16 was not a duty required of the mayor. The law gave him a certain number of days to consider the matter. Neither the law nor the public good required the ordinance to be signed on that day. The mayor was ready and willing and able to perform his public duty in reference to this ordinance, and the president of council had no legal authority to prevent the performance by the mayor of the duty he was elected to perform and which he was able, ready and willing to perform (46 Mich., 213; 19 Am. Rep., 634; 21 Am. Rep., 551; 77 O. S., 182; 71 S. W., 622).
For the foregoing reasons a decree may be entered granting the prayer of the petition in this case.