CYTACKI *v.* BUSCKO.

1. MUNICIPAL CORPORATIONS—HAMTRAMCK CHARTER—WHEN MAYOR "ABSENT FROM THE CITY."

Where the mayor of Hamtramck left the city and the State, intending to remain away for a number of days, he was "absent from the city" within the meaning of the city charter adopted under the home-rule act (1 Comp. Laws 1915, § 3304 *et seq.*) providing that in case of his absence from the city the president of the council should be acting mayor.

2. SAME—CONSTRUCTION OF CHARTER—INTENT TO GOVERN.

In the construction of a city charter, the intent of the framers and of the people in adopting it, gleaned from a consideration of all of its provisions, should be controlling.

3. SAME—POWER OF ACTING MAYOR DURING ABSENCE OF MAYOR LIMITED TO ROUTINE DUTIES AND CASES OF EMERGENCY.

The provision of a city charter empowering the president of the council to act as mayor in case of the latter's "inability to perform the duties of the office by reason of sickness, absence from the city, or other cause," *held*, not to empower the acting mayor to interfere with the mayor in the discharge of his duties by the summary removal

of his appointees to office during his temporary absence, although he himself has such power, but the acting mayor is limited to performing routine duties and meeting such cases of emergency as may arise.

4. SAME—ASSUMED THAT MAYOR CONDUCTS CITY'S AFFAIRS FOR BEST GOOD OF ALL.

It must be assumed that the mayor of a city is impressed with the duty he owes to his people to conduct its affairs in a manner most productive of good to all of its citizens.

5. SAME — "ABSENCE" OF MAYOR CONSTRUED — POWER OF ACTING MAYOR.

"Absence" of the mayor of a city empowering the president of the council, under its charter, to act as mayor during his absence, means such an absence as constitutes inability on the part of the mayor to perform the particular duty which the acting mayor has assumed to perform.

Appeal from Wayne; Carr (Leland W.), J., presiding. Submitted January 30, 1924. (Docket No. 109.) Decided April 10, 1924.

Bill by Walter Cytacki, superintendent of public works, against John E. Buscko and others, members of the city council of the city of Hamtramck, to enjoin an interference with the performance by plaintiff of his official duties. From a decree for plaintiff, defendants appeal. Affirmed.

*Frederick W. Bauer*, for plaintiff.

*Donnelly, Hally, Donnelly & Munro* (*Louis F. Dahling*, of counsel), for defendants.

SHARPE, J. The village of Hamtramck, in Wayne county, organized itself into a city on April 3, 1922, and adopted a charter in accordance with the home-rule act (1 Comp. Laws 1915, § 3304 *et seq.*). Peter C. Jezewski was elected mayor. Section 2 of chapter 5 of the charter provides for the appointment by the

mayor of certain officials, among them a superintendent of public works—

"each of whom shall hold office, unless sooner removed as provided in this charter, until the next regular time herein provided for appointment to be made to such office and until a successor shall be appointed, qualified and entered upon the duties of the said office."

Section 3 of chapter 9 reads as follows:

"In case of a vacancy in the office of the mayor or his inability to perform the duties of the office by reason of sickness, absence from the city, or other cause, the president of the city council shall be acting mayor, and in case at that time there shall be a vacancy in the office of the president of the city council or he shall be unable to perform the duties of his office by reason of sickness, absence from the city, or other cause, the president *pro tem.* of the city council shall be acting mayor of the city.    Such acting mayor shall be vested with all the powers and shall perform all the duties of mayor until the vacancy or vacancies aforesaid be filled, or the mayor or president of the council, as the case may be, shall resume his office.    In case of a vacancy in the office of mayor the council shall appoint a successor who shall have the qualification required by the mayor, but in case of the recall of the mayor, as provided by the statutes of the State, then the vacancy shall be filled according to the provisions of said statute.

"The mayor shall keep an office in some convenient place in the city to be provided by the city council.

"The mayor may make such appointments to office as are prescribed by this charter or ordinance of the council and may remove such appointees without assigning cause and may fill the vacancy caused thereby."

Pursuant to the charter provision, the mayor appointed the plaintiff superintendent of public works of the city.    On or about the 7th day of May, the mayor, accompanied by the plaintiff, made a trip to Cleveland, New York and other eastern cities.    On being so informed, the defendant, John E. Buscko,

who had theretofore been regularly elected president of the council, assumed the duties of the office of mayor. On May 9th, he summarily removed the plaintiff from office, notifying the city clerk of such action and also the plaintiff by a communication left at his residence. It does not appear that he made any appointment to fill the vacancy thus created, or that one has been since made by the mayor. The plaintiff, on his return to the city, assumed the duties of his office, treating his removal as a void act, but the council have refused to recognize him as superintendent of public works. In his bill of complaint, he seeks a decree "directing and ordering" the council to desist from interfering with him in the performance of his official duties. He was granted the relief prayed for by the trial court. The case is here on appeal of the defendants.

The only question presented or discussed is whether the acting mayor had the power and authority under the provisions of the charter to discharge the plaintiff. The facts are not in dispute. The purpose of the provision conferring power on the acting mayor is apparent. Under it the city may not be left without an executive officer vested with the powers and charged with the duties imposed by the charter upon the mayor.

No effort has been made to specifically define the term "absence" as used in city charters, statutes and constitutions by the framers thereof. Literally, it may be said that a person is absent from a place when he is not physically present therein. To hold that it was intended to be so used in this charter would lead to results which might seriously impair the efficiency of the city government. Should the mayor of this city cross its boundary line, he would literally be absent from the city. If, when so absent, the acting mayor has the power to assume the office and discharge its duties, other than those arising out of an

emergency, an unseemly scramble for power and patronage would follow which could but result in impairing the usefulness of both such officers in the discharge of their official duties and seriously affect the government of the city as a whole.    An interpretation should not be given to the words "absence from the city" which might lead to such results.    When, however, as here, the mayor has left the city and the State, intending to remain away for a number of days, we think it must be held that he was "absent from the city" within the meaning of the charter provision.

We are next confronted with the question as to what power is conferred on the acting mayor during such an absence.    No limitation is expressed in the charter. In *Ferle* v. *City of Lansing,* 189 Mich. 501 (L. R. A. 1917C, 1096), it was said that "the charter itself is the declaration of the public policy of the city."    In *People, ex rel. Brown,* v. *Parsons,* 200 Mich. 39, this court held (syllabus) :

"A section of a city charter will not be given a literal construction, where such construction would lead to a manifest absurdity."

The intent of the framers of the charter, and of the people in adopting it, so far as it may be gleaned from a consideration of all of its provisions, must be ascertained, if possible, and, if it can be, we should be guided by it.    Under its several provisions, much power is vested in the mayor.    He is largely held responsible for the conduct of the affairs of the city. There was clearly no intention to interfere with him in the discharge of his duties by the provision empowering the president of the council to act in case of his "inability to perform the duties of the office by reason of sickness, absence from the city, or other cause."    There are few people who are not absent from their homes several times during each year on

account of business engagements, illness of relatives, or other causes, and at times such absences are necessarily somewhat protracted.   If a mayor may not leave his city under such circumstances without having his plans for the conduct of the city business interfered with by the removal of his appointees, few self-respecting men would be willing to accept such an office.

It must be assumed that the mayor of a city is impressed with the duty he owes to his people to conduct its affairs in a manner most productive of good to all its citizens.   His appointments should be made with the sole object in view of placing men in charge of the several departments of the city government who are capable, efficient and honest, and who will administer the affairs of their departments in a manner conducive to the best interests of the people of the city as a whole.   These appointees are directly under his control and may be removed by him at any time without assigning any cause therefor.   Under this system of government, the mayor is given the power to personally direct the affairs of the city through the agency of his appointees.

The importance of the office of superintendent of public works is clearly shown by the record.   He receives a salary of $3,500 per year.   He has charge of the streets, water and sewer systems, and other activities indicated by the title of his office.   His department employs about 200 men.   In order that it may efficiently function, plans for street improvements, sewers, extension of water mains and the like must be adopted and adhered to, consistent with the amount of money appropriated for such purposes. The mayor has the right to insist that such plans have his approval, and, in case of disagreement, he may remove the officer and appoint another who will act in accord with his judgment.   Under the charter, he

226—Mich.—34.

has supervisory control over the acts of all of his appointees and must answer to the people for the manner in which they discharge their duties.   Under such a system, it would be intolerable to permit such officers to be removed by the acting mayor unless the absence of the mayor was so prolonged as in effect to make the acting mayor the actual mayor of the city.   We think a fair interpretation of the word "absence," as here used, means such an absence as constitutes inability on the part of the mayor to perform the particular duty which the acting mayor has assumed to perform.   He may, of course, perform the routine duties of the office and meet such cases of emergency as may arise.   While, as before stated, the absence might be so protracted as would justify him in removing an official, there was no justification for removing the plaintiff on the second day after the mayor had left the city, as was here done.

The conclusion reached is in harmony with all the authority on the subject which we have been able to discover.   In *Mayor of Detroit* v. *Moran,* 46 Mich. 213, the president of the common council as acting mayor, under a charter provision quite similar to that now under consideration, during the absence of the mayor in Chicago, approved a resolution of the council the day after its adoption, although under the charter the mayor had until the next regular meeting of the council to do so.   It was said:

"It is not sufficient to justify the president in acting, that the mayor is absent from the city.   If it were his stepping beyond the corporate limits for never so short a period would confer upon the president power to act—a construction which would be so productive of mischief that it could not be supposed to have been so intended by the legislature.   It is only when the mayor is *unable to perform the duties of his office by reason of absence* from the city that the president can act.   The absence in this case would not disable him from performing his duties, as he had until the

next meeting of the council, and the president of the council could not anticipate a disability that did not in fact exist, and by a hasty approval of a resolution, deprive the mayor of his right to consider the same."

In *Watkins* v. *Mooney,* 114 Ky. 646 (71 S. W. 622), wherein a similar question was presented, the court said:

"We have therefore concluded that the absence contemplated by the legislature, in the employment of that word in the section under discussion, is not merely a physical absence of the mayor from the city, but is such an absence as renders him incapable for the time being of performing the act that may be in question, which act must present such a necessity for immediate attention as to require it to be then executed. In the case at bar there was no such urgency, and no emergency apparent for the president of the board of aldermen to assume the duties of mayor. *Mayor of Detroit* v. *Moran,* 46 Mich. 213; *Lynde* v. *Winnebago County,* 16 Wall. (U. S.) 6; *Attorney General* v. *Taggart,* 66 N. H. 362 (29 Atl. 1027, 25 L. R. A. 613)."

In *State, ex rel. Olson,* v. *Lahiff,* 146 Wis. 490 (131 N. W. 824, Ann. Cas. 1912C, 350), there was a similar charter provision. The mayor was required to appoint a board of police and fire commissioners between the 25th day of April and the 2d day of May. During the absence of the mayor (he was without the State), the president of the council, as acting mayor, made such appointments on April 26th. It was held that there was no such "absence" on the part of the mayor as warranted such action.

*State, ex rel. Warmoth,* v. *Graham,* 26 La. Ann. 568 (21 Am. Rep. 551), in which the right of a lieutenant governor to act in the absence of the governor, under a constitutional provision conferring such power quite similar to that in this city charter, and *People, ex rel. Tennant,* v. *Parker,* 3 Neb. 409 (19 Am. Rep.

634), wherein the president of the senate, in the absence of the secretary of State, who was acting as governor, issued a call for a special session of the legislature, will be found instructive on the construction which should be placed on the word "absence" in such provisions.

The decree is affirmed, with costs to appellee.

CLARK, C. J., and MCDONALD, BIRD, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.