## Francois Gelinas *vs.* Alphonse Fugere.

### July 20, 1935.

Present: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

PER CURIAM. This is a petition in equity in the nature of *quo warranto*, brought under the provisions of general laws 1923, chapter 379.

The petitioner, Francois Gelinas of Woonsocket, is making claim to the office of commissioner of public works of that city, and requests the court to confirm his right to that

position. The respondent Alphonse Fugere, the present acting commissioner of public works, contends that he is rightly and lawfully the holder of that office, and contests the right of the petitioner thereto.

From the record it appears that the act creating the office of commissioner of public works for the city of Woonsocket, providing for his appointment and defining his duties, is found in public laws 1929, chapter 1498. Section 1 of this chapter was amended by an act passed by the general assembly at its January session, 1935, and approved by the governor March 12, 1935. Public laws 1935, chapter 2245. This amendment provides in substance that after its passage the city council of Woonsocket by the concurrent action of both its branches, viz., the common council and the board of aldermen, shall elect a commissioner of public works for a certain definite term, and thereafter at regular stated periods. It also provides that the office of the commissioner of public works elected by the concurrent vote of both such branches of the city council in January 1933, shall cease and determine upon the election and qualification of his successor elected under this amending act. The respondent, Fugere, was elected commissioner of public works of Woonsocket in January 1933, and is still holding that office, contending that as yet no successor, other than himself, has been lawfully elected by the concurrent action of both such branches of the city council.

The petitioner, Gelinas, rests his claim to the office in question, upon concurrent action taken at certain alleged meetings of the board of aldermen and the common council held on March 23, 1935, at which meetings he purportedly was elected commissioner of public works. He also urges that his bond as such commissioner was approved at an adjourned meeting of the board of aldermen held on April 26, 1935.

The legality of all these meetings is questioned by the respondent, who contends that he himself was properly elected to the office in dispute by a vote taken at a meeting

of the common council held March 27, 1935, and by a vote of the board of aldermen at a meeting on April 23, 1935, at which latter date he also claims his bond was approved. The petitioner does not question the validity of the meeting of the common council held on March 27, 1935, but does attack the alleged action taken at the meeting of the board of aldermen held April 23, 1935, in respect to the election of the respondent and the approval of his bond.

The first point to be considered relates to the legality of the meetings of the common council and the board of aldermen of March 23, 1935. It is agreed by the parties that on March 22, 1935, the common council of the city of Woonsocket, comprising fifteen members, held a valid meeting and adjourned, subject to the call of its president. From the evidence it appears that on the following morning, Saturday, March 23, 1935, the president of the common council and two of the aldermen, one of them president of the board, met shortly before 9 a. m. at the place in which one of them was employed. Alderman Holland, the president of the board then, informed Mr. Cabana, the president of the common council, that he, Holland, was going to call a special meeting of the board of aldermen for 10 a. m. that day at the city hall, for the purpose of electing a commissioner of public works for the city of Woonsocket, and asked Mr. Cabana to call the common council together at the same time and for the same purpose. The latter expressed his willingness to do this, and asked Mr. Martin, the other alderman present, to request the city clerk to get out the notices for the meeting and have them served. Later Mr. Cabana was told by alderman Martin that the notices had been sent out.

From the testimony of that alderman, it appears that by telephone he notified the city clerk in regard to the notices and got in communication with the city sergeant. He also stated that he, Martin, would give notice of the meeting by telephone to alderman Lauzon and to the majority members of the common council. The evidence discloses that each

branch of the city council was divided into two distinct factions. In the common council, eight members made up one group and seven, the other; in the board of aldermen the division was three and two.

The city sergeant testified that he left the city hall about 9:15 that same morning with nine notices to serve, two of which he had obtained from the city auditor, for aldermen Doris and Morin, and seven of which he had received from the city clerk, for service on the minority members of the common council. Apparently he had with him no notices for the other three members of the board of aldermen or the other eight members of the common council. It is agreed by the parties, however, that all the members of the board of aldermen and of the common council received a type-written notice of their respective meetings, and in the case of the members of the board of aldermen all were served by the city sergeant. In serving the notices he made use of an automobile, because some of the persons to be served lived at a considerable distance from the city hall. The notices, one of which is an exhibit herein, served on and received by the members of the common council, were signed in typewriting as follows: "Very truly yours, James H. Holland   Acting Mayor."

It is admitted that Mr. Holland did not send out this notice to the members of the common council, and the evidence shows that he did not authorize the use of his name in this connection, that he did not attempt as acting mayor or in any other capacity to call the common council together, and, in fact, was not aware of the nature of the notices to the members of that body till a considerable time later. Mr. Cabana, the president of the common council, testified that he signed no notices to be served on the members of the common council, and that he did not know till afterwards that the notices went out in Mr. Holland's name.

The common council and the board of aldermen each met March 23, 1935, soon after 10 a. m. Each meeting lasted

only a few minutes. Eight members attended the meeting of the common council and three members, the meeting of the board of aldermen, a bare *quorum* in each instance. None of the members whose notices the city sergeant took from the city hall for service attended the meeting of either body. At these two meetings by concurrent vote the petitioner was elected commissioner of public works of the city.

The respondent maintains that this meeting of the common council was improperly called. The petitioner denies this, and relies on the official record of the meeting, which record he claims cannot be attacked collaterally by parol evidence. He urges that the record if inaccurate should first be corrected in an independent proceeding brought for that particular purpose, and further, that the presumption being that the record is correct, the burden of proof is on the one seeking to change it. We recognize as sound these general principles of law contended for by the petitioner. 19 R. C. L. 903. In our opinion, however, they do not apply to the situation now before us. The record of the meeting of the common council is the record of what transpired at that meeting in the presence of the clerk, and nothing more. The respondent is not questioning the accuracy of the minutes in relation to what happened at the meeting. The fact that the record of the meeting, as prepared by the clerk, starts with the words, "Pursuant to the call of the chair," is not conclusive. The facts relating to the call of the meeting are not part of what took place at the meeting, the latter alone properly constituting the clerk's record in the absence of any further legal requirement. The following language is found in Dillon, Municipal Corporations, (5th ed.) Vol. II, 870: "Thus, if it appears that a special meeting of the city council has been held, it will be presumed, *in the absence of proof to the contrary, that it was regularly called.*" (Italics ours.) Obviously the presumption here referred to may be rebutted by sufficient contrary evidence. We are of the opinion, there-

fore, that the respondent may show in this proceeding by parol evidence or otherwise, in what manner and by whom the meeting in question was called, in order that its validity may be determined.

The meeting of the common council held March 23, 1935, was not a regular meeting of that body; neither was it, strictly speaking, a special meeting, nor was it a meeting adjourned to that date. The power to call special meetings of either the common council or the board of aldermen by the provisions of the city charter of Woonsocket is vested in the mayor. Section III, clause 3. It may be questioned whether the common council could properly adjourn to the call of its president, beyond the legislative day of March 22, 1935. McQuillin on Municipal Corporations, (2nd ed.) vol. 2, 403. This action did not constitute an adjournment to a definite date, and to some extent would seem to contravene the provisions of the city charter, which give to the mayor only the power to call special meetings of the city council and its branches. However, we do not find it necessary to determine at this time the effect of this method of adjournment.

Although the notice for the common council meeting of March 23, 1935, bore the typewritten signature of Mr. Holland as acting mayor and referred to a special session, it is very clear from the evidence introduced that he was in no way attempting to exercise the mayor's powers under the city charter to call a special meeting of that body. He himself so testifies, and also to the fact that he did not authorize the use of his name in that connection, and that he had no knowledge till later that it had been used. The testimony makes it plain that it was the intent of those interested to have Mr. Cabana call the common council together, but no notice to this effect bearing the latter's name or signature was ever served on its members. As a result of this confusion and under the facts and circumstances as disclosed by the evidence in this case, the minority members of that body received no notice of this meeting of

March 23, 1935, from any person with authority to give it. They were, therefore, warranted in disregarding the notice as received by them. It is settled that the absence of proper notice to any member will render such a meeting as the one in dispute, illegal. The fact that a majority of the body attend the meeting does not cure the defect. All must be present to bring that about. McQuillin on Municipal Corporation, (2nd ed.) Vol. 2, 449. We are of the opinion that no proper and authorized notice of the common council meeting of March 23, 1935, was served on its members, that this alleged meeting was illegally held, that the purported action taken thereat in electing the petitioner commissioner of public works of Woonsocket was without effect, and that he acquired no right to that office by any action taken at such attempted meeting.

While the above finding serves to dispose of this petition, it seems advisable to pass on the question of the validity of the special meeting of the board of aldermen held March 23, 1935, in order that the rights of the immediate parties may be fully determined, and that the entire matter may be disposed of in the public interest. As to this meeting, the respondent raises no issue in regard to the form of the notices served on the aldermen. These notices were signed by Mr. Holland as acting mayor in his own handwriting, and in so doing he purported to act in that capacity. The petitioner contends that this special meeting was properly called and was valid because at the time it was called the mayor of the city of Woonsocket was absent from that city and therefore, under the charter his powers devolved upon the acting mayor, the president of the board of aldermen, Mr. Holland. The material portion of clause 1, section IV of the city charter reads as follows: ". . . and in case of the death, absence from the city, or disability of the mayor, the president of the board of aldermen shall exercise for the time being all the powers and duties of the mayor." The respondent admits the absence of the mayor from the city at the time the special meeting of the board was called

by Mr. Holland, but claims that no reason or necessity existed to require its calling, and urges that the call was invalid and the meeting illegal.

The evidence discloses that the mayor of Woonsocket left that city by automobile about 8:30 a. m. on the morning of March 23, 1935, to attend to private legal business in a nearby city in an adjoining state. He did not say when he intended to return. He reached his destination about 9:15 a. m. that morning and, while transacting his business, heard by telephone, about 10:10 a. m., that meetings of both branches of the city council had been called to convene that morning in Woonsocket at 10 a. m. He immediately drove back to that city, reaching there about 10:45 a. m., and found that the meetings in question had been held. Before leaving Woonsocket he had not been requested by anyone to call special meetings of either branch of the city council.

It appears from the testimony that Mr. Holland, the president of the board of aldermen, had the movements of the mayor watched so that he might call a special meeting of the board when the opportunity offered. He was informed on the morning of March 23, 1935, at about 8.35 a. m., of the mayor's absence from Woonsocket, and also by telephone of his movements toward the nearby city, of the time he left that city to return, and of his progress on the way back. As soon as the information that the mayor had left Woonsocket reached Mr. Holland, he ordered the notices of the special meeting of the board sent out. The record of the special aldermanic meeting of March 23, 1935, shows that it began at 10:19 a. m., shortly after the mayor had started on his return to Woonsocket.

It is necessary for the orderly conduct of municipal affairs, to provide that in the absence of the mayor from a city some person be vested with authority to exercise his powers and duties. In Woonsocket, the city charter gives this authority to the president of the board of aldermen, and when the mayor has left that city, such authority undoubtedly is reposed in the former official. The issue

raised in this case is whether, having such authority, he may exercise it regardless of circumstances and without restriction at any time the mayor passes beyond the city limits, or whether its exercise is bound by reasonable limitations.

This general question has received consideration by the courts.

No authority has come to our attention which holds that the mere absence of a mayor from a city, in and of itself alone, confers authority on an acting mayor to exercise the powers and duties of that office without any restraint or any regard to existing facts. Courts have not given that narrow and literal construction to the words, "absence from the city," when used in this connection.

In the case of *Watkins* v. *Mooney*, 114 Ky. 646, the court gave the following meaning to the words under consideration: "We have therefore concluded that the absence contemplated by the Legislature in the employment of that word in the section under discussion, is not merely a physical absence of the mayor from the city, but is such an absence as renders him incapable for the time being of performing the act that may be in question, which act must present such a necessity for immediate attention as to require it to be then executed."

The following language appears in the opinion of the court in *Cytacki* v. *Buscko*, 226 Mich. 524: "Should the mayor of this city cross its boundary line, he would literally be absent from the city. If, when so absent, the acting mayor has the power to assume the office and discharge its duties, other than those arising out of an emergency, an unseemly scramble for power and patronage would follow which could but result in impairing the usefulness of both such officers in the discharge of their official duties and seriously affect the government of the city as a whole. An interpretation should not be given to the words 'absence from the city' which might lead to such results." That court then gives

to the word "absence" an interpretation very similar to that applied by the court in *Watkins* v. *Mooney, supra.*

In *State* v. *Lahiff,* 146 Wis. 490, the court holds that: " 'Absence' must be construed reasonably, and so construed means, we think, what may be called 'effective' absence. If during the mayor's absence from the city, even for a brief time, a riot occurs, or an occasion arises which demands immediate exercise of the executive power to preserve order or enforce the laws, the powers and duties of the mayor to meet the emergency must necessarily be vested in the president of the council fully and completely during the period of the absence."

We are in full accord with the general principles enunicated by these courts in their interpretation of the meaning and scope of the phrase, "absence from the city."

The petitioner claims that the facts in the above cases make them distinguishable from the instant case, and render the language used by these courts inapplicable. In these cases it appeared that the acting mayor, in the absence of the mayor, took some positive action, such as the appointment or removal of an official, or performed a duty with a fixed period of time during which the mayor was authorized to act but had not as yet done so. In the case before us, the acting mayor called a special meeting of the board of aldermen so that a commissioner of public works might be elected. After the meeting had convened, all the aldermen attending, including the acting mayor, used their right to vote for a candidate for that office. The exercise of the power to call the meeting together was the important factor. Without a meeting no commissioner of public works could have been elected. The difference between the act performed by the acting mayor in the present case and those performed in the cases cited is one of degree. The same underlying principles apply in each instance, and the cases are in point on the question now before us.

We are of the opinion that the phrase, "absence from the city," should be reasonably and not literally construed.

The absence should be considered in relation to the particular act in question, and when so considered, should be an absence which renders the mayor powerless, for the time being, to carry out such act. Further, the contemplated act, the performance or nonperformance of which is presented to the acting mayor for his determination, assuming the mayor to be actually absent from the city, should contain an element of emergency and necessity for immediate execution, before the acting mayor is justified in making use of the latent authority he possesses to exercise the powers and duties of the mayor. The existence of a riot, conflagration or some like emergency would clearly warrant the exercise of full executive powers by an acting mayor, even if the mayor were absent from the city for only a short time or distance. On the contrary, it is possible that nothing in the nature of an emergency or a necessity might occur in the city's affairs which would require an acting mayor to make use of the mayor's powers, even though the latter was away for some time.

The acting mayor should undertake the exercise of the powers and duties of the mayor in good faith only and for the welfare of the municipality and its inhabitants, and not with any factional or partisan advantage in view. He should not seize an opportunity to exercise these powers regardless of existing conditions and without justifiable cause. In discussing the absence of the governor of Louisiana from that state, the court in *Louisiana* v. *Graham*, 26 La. Ann. 568, said: "We do not think it was ever contemplated that the movements of the Governor should be watched, with the view that the Lieutenant Governor, or Speaker of the House of Representatives should slip into his seat, the moment he stepped across the borders of the State."

On the other hand, it is not proper for the mayor of a city to absent himself from the city for any extended period and attempt to direct its affairs from a distance. In *State* v. *Lahiff, supra*, in giving the reasons for inserting in a city

charter a provision that some official be authorized in the absence of the mayor to exercise his powers and duties, the court said: "First, that the duties of the mayor should be performed within the city and not at long range by an absentee official."

We are in thorough agreement with this statement. Furthermore, if the mayor is absent when regular meetings of the board of aldermen are to be held, the provisions authorizing the president of said board to preside and perform the duties of the mayor are unaffected by this decision. Such express authority granted to the president of the board to so act does not depend for its proper exercise upon any theory of emergency or necessity, as herein set forth.

Examining the facts in the instant case in the light of these general principles, we are of the opinion that such facts reveal no necessity or emergency existing on the morning of March 23, 1935, which required the calling of a special meeting of the board of aldermen of Woonsocket for the purpose of electing a commissioner of public works for that city. The respondent on that date, and for some considerable time previously, had been acting as commissioner of public works, and was legally entitled to continue to conduct the affairs of that department until his successor was duly elected and qualified. We find that, although the mayor of Woonsocket was physically absent therefrom for a short time, Mr. Holland, as acting mayor, had no justifiable authority for exercising the powers of the mayor in calling the special meeting of the board of aldermen in question. It follows, therefore, that this special meeting of that body held on March 23, 1935, was called without proper authority and that it was illegal and invalid. We find that the petitioner has no claim to the office of commissioner of public works of Woonsocket by reason of any alleged election or attempted action taken at that meeting. This decision makes it unnecessary to pass upon the question of whether or not under the facts of this case, the members of the two

branches of the Woonsocket city council received reasonable and timely notice of the meetings held on March 23, 1935.

In view of our holding herein that the meetings. of the common council and of the board of aldermen of Woonsocket held on March 23, 1935, were both illegal and of no effect by reason of being improperly called, at which meetings an attempt was made to elect the petitioner commissioner of public works by concurrent action, and in view of our decision in the case of *Toupin et als.* v. *Marceau*, 55 R. I. 265, heard herewith, that an adjourned meeting of the board of aldermen held April 26, 1935, was invalid, at which meeting the petitioner's bond was approved, it is our opinion that the petitioner has no claim of right to the office of commissioner of public works of that city.

In regard to the claim of the respondent to that office, we have determined in the case of *Toupin et als.* v. *Marceau*, *supra*, that the meeting of the board of aldermen of April 23, 1935, at which time he was elected commissioner of public works and his bond approved, was illegal and such attempted action null and void.

It has appeared in the instant case, however, that the common council at a valid meeting held on March 27, 1935, did elect the respondent commissioner of public works. We find, that, in spite of this action, he can not claim title to the office in dispute by virtue of any election held by both branches of the city council of Woonsocket subsequent to March 12, 1935, when the amending act was approved by the governor, because he lacks the concurrent vote of the board of aldermen and the approval of his bond.

The respondent, however, was the incumbent of the office in question prior to March 12, 1935, and was authorized to continue in that office, under the provisions of the amending act, until his successor was elected and qualified. As we have found that as yet no such successor to the respondent has been legally elected by the concurrent action of both branches of the city council, he is entitled to perform the

duties of that office and receive its salary by reason of the continuance of his term, until such time as the provisions of the amending act approved March 12, 1935, are properly carried out.

The petition is denied and dismissed.

*Edward F. Dwyer, Thomas F. Cooney,* for petitioner.
*Eugene L. Jalbert, Felix A. Toupin,* for respondent.
*Morris E. Yaraus, City Solicitor,* for City of Woonsocket.