## WALLS v. HALL, SECRETARY OF STATE.

4-6493                                                    154 S. W. 2d 573

Opinion delivered October 13, 1941.

*Owen C. Pearce* and *Culbert L. Pearce,* for appellant.

*Jack Holt,* Attorney General, and *Clyde E. Pettit,* Assistant Attorney General, for appellee.

HUMPHREYS, J.   Appellants brought this suit to compel C. G. Hall, Secretary of the State of Arkansas, to certify, transcribe and include House Bill No. 300 and House Bill No. 637 in the printed acts of the 53d General Assembly of the State of Arkansas, alleging that the veto of the respective bills by the acting governor was and is void. The acting governor, the Honorable Willis B. Smith, was elected president *pro tempore* by the senate of which he was a member on the 25th day of January, 1941, and took his oath on the floor of the senate as president *pro tempore* of that body immediately after his election to that position and presided over the senate during the session whenever the duly elected Lieutenant Governor, the Honorable Robert Bailey, was absent.

The house bills in question were delivered to the Secretary of State after the adjournment of the General Assembly *sine die* at noon on March 13, 1941.

These bills were properly passed by the senate and house, and on March 14, 1941, after being duly certified and correctly enrolled, said bills were delivered by the Secretary of State to the Honorable Homer M. Adkins, the duly elected, qualified and acting Governor of the State of Arkansas, for executive action and had not been acted upon by the Governor or Lieutenant Governor when the president *pro tempore* assumed the duties of acting Governor.

The Honorable Willis B. Smith, president of the senate *pro tempore,* was notified over telephone by both the Governor, Homer M. Adkins, and the Lieutenant Governor, Robert Bailey, that they and each of them would be absent from the State of Arkansas on March 31, 1941, and April 1, 1941, and, at the time of the notification each of them requested him to act as Governor of the State of Arkansas on those dates or until the return of one or the other of them to the state.

Governor Homer M. Adkins left the state on the night of March 30, 1941, for Washington, D. C., to attend to matters pertaining to refunding the bonded indebtedness of Arkansas and did not return until April 4, 1941.

Lieutenant Governor Robert Bailey did not appear at the Governor's office in Little Rock, Arkansas, on March 31, 1941, and, in response to the request aforesaid the Honorable Willis B. Smith, president *pro tempore* of the state senate, appeared at the Governor's office during the morning of March 31, 1941, after being advised by the Attorney General of the State of Arkansas that it was not necessary for him to take an additional oath in order to act as Governor. On that day he acted as Governor and was in full possession of the office, and performed all the duties called to his attention, imposed by law upon the regular Governor. In acting he used the Governor's secretary and other clerical help in his office, all of whom recognized him as the acting Governor of the State. The record is silent as to where Lieutenant Governor Bailey was on that date except that it is shown that he spent the night of March 31, 1941, at his home in Russellville, Arkansas. On the morning of April 1, 1941, the acting Governor again entered upon the duties of the office, first telephoning to the Lieutenant Governor's private office and ascertaining that he continued to be absent from the state. He was in the actual possession and control of such office, and of the records, equipment and appurtenances thereof during the entire day with the acquiescence of all the officials in the office and about two o'clock p. m., after dictating the veto messages and stating his objections to House Bill No. 300 and House Bill No. 637 and dictating notices thereof by proclamation, he signed same and attached them to the original bills and delivered them, through a regularly employed secretary in the office, to the office of the Secretary of State not later than 2:30 o'clock p. m. on that date. The message of the veto of each bill and the proclamation thereof giving his reasons for vetoing them was attached to each bill and filed in the office of the secretary of state. The Secretary of State receipted for the original bills and the proclamations of the veto at the time they were returned

with objections and notices of proclamation. The vetoes and proclamations thereof were in the usual form and conformed to law.

The record reflects that the Lieutenant Governor was in Oklahoma on the forenoon of April 1, returning to Fort Smith about 11:25 o'clock a. m. on that date, from which point he had gone to Oklahoma earlier in the forenoon; and that he returned to Oklahoma, crossing the state line about 12:50 or 12:55 o'clock p. m. on that date and stayed in Oklahoma until about four o'clock p. m., at which time he came back into Arkansas and spent the night at his home in Russellville, Arkansas.

The veto of each of the bills by the acting Governor was sustained by the trial court and appellants' complaint was dismissed over the objection and exception of appellants, from which an appeal has been duly prosecuted to this court.

Prior to the adoption of Amendment No. 6 to the Constitution of 1874 no provision had been made for the election of a Lieutenant Governor, and there had been controversies and some litigation in the state as to who should act as Governor in case the Governor should become disqualified or in his absence from the state. In order to avoid future controversies of this nature the legislature of 1913 proposed Amendment No. 6 to the Constitution of 1874, amending § 17 of art. V of the Constitution of the State of Arkansas and submitted the same to the people to be voted upon at the general election September 14, 1914. The speaker of the house declared the amendment lost because it had not received a majority of the highest total vote cast in the election, but this court decided in *Brickhouse* v. *Hill,* 167 Ark. 513, 268 S. W. 865, decided February 16, 1925, that the initiative and referendum amendment of 1910 was declared to have amended this majority requirement so as to require only a majority of those voting on the question where submitted under the initiative and referendum. But on the 12th day of April, 1926, in *Combs* v. *Gray,* 170 Ark. 956, 281 S. W. 918, this amendment was declared in force, the court holding that the initiative and referendum of 1910 made no distinction as to how the amendments were submitted.

We deem it unnecessary to quote the whole amendment because the issues involved on this appeal only require that we quote a part of it. We, therefore, quote a part of § 2, a part of § 4, and all of § 5:

"Section 2. The executive power shall be vested in a Governor, who shall hold office for two years; a Lieutenant Governor shall be chosen at the same time and for the same term. . . ."

"Section 4. In case of the impeachment of the Governor or his removal from office, death, inability to discharge the powers and duties of the said office, resignation or absence from the state, the powers and duties of the office shall devolve upon the Lieutenant Governor for the residue of the term, or until the disability shall cease. . . ."

"Section 5. The Lieutenant Governor shall possess the same qualifications of eligibility for the office as the Governor. He shall be President of the Senate, but shall have only a casting vote therein in case of a tie vote. If during a vacancy of the office of Governor, the Lieutenant Governor shall be impeached, displaced, resign, die or become incapable of performing the duties of his office or be absent from the state, the President of the Senate shall act as Governor until the vacancy be filled or the disability shall cease; and if the President of the Senate for any of the above causes shall become incapable of performing the duties pertaining to the office of Governor, the Speaker of the Assembly shall act as Governor until the vacancy be filled or the disability shall cease."

Appellants contend and argue that the president *pro tempore* of the senate is without power and authority to veto bills passed by the general assembly though acting as Governor because they say the power rests to veto bills soley in the Governor. Such authority is conferred upon him by the Constitution of 1874, but not the sole power to do so since the adoption of Amendment No. 6 to the Constitution for it is plainly stated therein that in the absence of the Governor from the state, "the powers and duties of the office shall devolve upon the Lieutenant Governor of the state." The amendment also plainly states that if the Lieutenant Governor is also absent from

the state, "the President of the Senate shall act as the Governor."

Our construction of Amendment No. 6 to the Constitution is that all the power and authority vested under the Constitution in the duly elected Governor of this state, in case of his absence from the state, devolves upon the Lieutenant Governor, and in case the Lieutenant Governor is also absent from the state all the duties, power and all authority of the Governor devolves upon the president *pro tempore* of the senate, and in case of his absence from the state all the duties, power and authority of the Governor devolve upon the Speaker of the assembly. We cannot agree, therefore, with learned counsel for appellants that the power to veto bills is exclusively in the Governor and, perhaps, in the Lieutenant Governor, and that only ministerial duties pertaining to the office of the Governor can be performed by the president *pro tempore* of the senate or Speaker of the assembly when acting as Governor. The amendment makes no such restriction upon the power or authority of either when acting as Governor and the court should not read into the amendment such restrictions and limitations upon the power and authority conferred upon them. We think the devolvement of the office of Governor, under certain contingencies, is upon: first, the Lieutenant Governor; second, the president *pro tempore* of the senate; and third, the Speaker of the assembly and necessarily constitutes them *de jure* officers when acting as Governor, and that their acts are just as effective and binding as the acts of the Governor himself.

Appellants also contend and argue that the veto of the bills in question is void because the president *pro tempore* of the senate did not take an additional oath before entering upon his duties as acting Governor and file same in the office of the Secretary of State. The record shows that he took an oath on the floor of the senate to perform his duties as president *pro tempore* immediately after being elected to that position. His duties embraced the duty to act as Governor in case of the absence of the Governor from the state. Having taken the oath once to perform his duties when acting as Gov-

ernor it was unnecessary to take another oath to perform such duty. If the argument of appellants is sound in this respect it follows that he should take an additional oath every time he might be called upon to act as Governor during the two-year term of the Governor. The one oath to support the Constitution of the United States, the Constitution of the State of Arkansas and to perform all his duties as president *pro tempore* of the senate bound his conscience as completely to perform his duties as many oaths would have done. The amendment under which he acted made no requirement for additional oaths.

Appellants also contend and argue that the veto of each of the bills is void because no written proclamation of the intended absence of the Governor and Lieutenant Governor was made and filed in the office of the Secretary of State to the effect that either or both of them would be absent from the state on March 31, 1941, and April 1, 1941. No such proclamation is required by Amendment No. 6 to the Constitution of 1874, nor by the constitution itself, and no such proclamation has ever been filed by any Governor of the state so far as a search of the records in the office of the Secretary of State discloses. After acquiescing in the sufficiency of an oral notification during the entire history of the state by the Governor to one entitled to act during his absence it would be almost revolutionary to declare the law to be that a written proclamation filed in the Secretary of State's office is a necessary requisite to the validity of the acts of an acting Governor.

Appellants also insist and argue that absence from the state as used in the amendment means a longer time than a part of a day or a few hours. It is our view that "absence from the state" as used in the amendment means out of the state for any period of time. We think one purpose of the amendment was to have someone in the state at all times capable of performing the duties and exercising the powers of the office of Governor. In the case of *Montgomery, et al.,* v. *Cleveland,* 134 Miss. 132, 98 So. 111, 543, 32 A. L. R. 1151, the Supreme Court of Mississippi decided, according to syllabus one, as follows:

"Under Constitution, 1890, § 131, providing that, 'when the Governor shall be absent from the state, . . . the Lieutenant Governor shall discharge the duties of said office until the Governor (shall) be able to resume his duties,' the Governor is absent when he leaves the state, and in such case the functions of the office are vested in the Lieutenant Governor, if in the state and able to perform the duties, during such absence."

The opinion Ex parte *Crump*, 10 Okla. Cr. 133, 135 P. 428, 47 L. R. A., N. S., 1036, was referred to as "one which to the minds of the majority of the court is satisfactory in its reasoning and conclusions." The Mississippi court analyzed the Oklahoma case extensively and bottomed its opinion largely upon it.

On a motion for rehearing in the Mississippi case it was said by Judge HOLDEN that: "I adhere to the views expressed in the main opinion; and that when the Governor is out of the state for any length of time I think a vacancy in the office then and there occurs, and it is immaterial as to what length of time he may have been out of the state, or what distance he had gone beyond the borders of the state. He might be in an adjoining state at a ball game or on a visit to Europe, or he may be away for several hours or several months. In either event there is a vacancy in the office according to the language of the Constitution, § 131, which provides:

" 'When the Governor shall be absent from the state, . . . the lieutenant governor shall discharge the duties of said office until the Governor be able to resume his duties.'

"He is not Governor when out of the state, so far as being able to act. It would be violating the language and spirit of this constitutional provision, and would also be venturesome on the part of this court, to hold or attempt to prescribe the length of time the Governor must be out of the state, or the distance he must be away from the state before a vacancy occurs, which empowers the Lieutenant to act. It would not be safe to adopt any rule, except that, when the Governor is beyond the borders of the state, this fact automatically causes a vacancy in his office, and the Lieutenant Governor, who is made a

substitute for the Governor in his absence, with the powers and duties of the Governor, shall exercise the functions of that office.''

There is no question in this case that the bills in question were vetoed in accordance with the law by the president *pro tempore* of the senate during the absence of the Governor and Lieutenant from the state of Arkansas. It is true that the Lieutenant Governor was absent only for a few hours, but it was during that particular time that the bills were vetoed by the acting Governor of the state.

The vetoes were, therefore, valid and the trial court correctly dismissed appellants' petition to compel the Secretary of State to certify, transcribe and include said bills in the printed acts of the 53rd General Assembly of the state of Arkansas.

No error appearing, the decree is affirmed.