GRANT SAWYER, GOVERNOR OF THE STATE OF NEVADA, PETITIONER, v. THE FIRST JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF ORMSBY, AND THE HONORABLE FRANK B. GREGORY, JUDGE THEREOF, RESPONDENTS.

No. 5021

February 4, 1966                    410 P.2d 748

*Harvey Dickerson,* Attorney General of Nevada, for Petitioner.

*Theodore H. Stokes,* District Attorney of Ormsby County, *Robert F. List,* Deputy District Attorney of Ormsby County, and *Laxalt, Ross and Laxalt,* of Carson City, for Respondents.

54

**OPINION**

*Per Curiam:*

Petitioner, the governor of Nevada, seeks a writ of prohibition to bar the First Judicial District Court from impaneling a state grand jury pursuant to NRS 6.135. Said statute initially was invoked by the lieutenant governor.

The facts are not in dispute. Prior to November 28, 1965, a controversy erupted as to conduct of the Nevada State Department of Highways. In public statements, the lieutenant governor suggested that a state grand jury be impaneled to investigate the highway department. Authority to call such a grand jury is derived from NRS 6.135, which confines that authority to the governor and the legislature. The governor disagreed with the lieutenant governor as to the need for a state grand jury. In reply, the lieutenant governor announced that *he* would demand the state grand jury—should he

ever serve as acting governor and come within the authority of NRS 6.135.

On Sunday, November 28, the governor left Nevada to make a previously scheduled, publicly announced dinner speech at Sacramento, California. The governor departed Carson City at 5:20 p.m., attended the dinner, and returned to Carson City at 10:10 p.m. In his absence, the lieutenant governor went to the home of a district judge at Carson City and requested that a state grand jury be impaneled pursuant to NRS 6.135. On returning, the governor revoked the lieutenant governor's request.

Nevertheless, the next morning, Monday, November 29, the district judge issued an order for impaneling of a state grand jury. It is to the directive of that order that the instant writ of prohibition is requested.

In seeking this writ of prohibition, petitioner presents three arguments, in this order: (1) that the lieutenant governor under the instant facts did not have power to request a state grand jury under NRS 6.135; (2) that the request properly was revoked by the governor; and (3) that the provision within the statute for payments is invalid. Under the instant facts, that last point is specious. As to petitioner's other arguments, they are inconsistent. If the request for a state grand jury could not have been made, nothing ever existed to have been revoked. Therefore we focus first on the request itself.

1. NRS 6.135, which provides for the calling of a state grand jury, as opposed to regular, county grand juries,[1] is confined to a "request of the governor, or of the legislature by concurrent resolution."[2] Clearly, no

[1] Cf. NRS 6.110, 6.120, and 6.130.

[2] "1. Upon request of the governor, or of the legislature by a concurrent resolution, the district judge of any county shall cause a grand jury to be impaneled in the same manner as other grand juries are impaneled, except that the sole duty of a grand jury impaneled under the provisions of this section shall limit its investigations to state affairs, and to the conduct of state officers and employees. The report of such grand jury shall be transmitted to the governor and the legislature.

"2. The expenses of a grand jury impaneled under the provisions of this section shall be a charge against the general fund of the state, to be certified by the district judge and paid on claims."

provision is made for a lieutenant governor. However, Art. V, Sec. 18 of the Constitution of the State of Nevada allows the lieutenant governor to serve as *acting* governor "[i]n case of the impeachment of the governor, or his removal from office, death, inability to discharge the duties of said office, resignation or absence from the state * * *."[3] In the matter before us, the lieutenant governor submits that he was acting goveron November 28 when he invoked the powers of NRS 6.135 because at that moment the governor was "absent from the state."

All agree that the governor was not physically present in Nevada at the moment in question. The dispute is whether "absence from the state" as contained within Sec. 18 was intended by the framers of our state Constitution to mean simply physical non-presence, however brief, or whether it was written into our Constitution to indicate some other condition. The overwhelming majority of states which have examined identical or nearly identical provisions have found that "absence" as contained within rules for orderly succession in government means "effective absence"—i.e., an absence which is measured by the state's *need* at a given moment for a particular act by the official then physically not present.

We find no reason to contradict this century-long compilation of decisions. Rather, we consider their logic proper and reasonable and conclude that it most nearly satisfies the role of any government. With this in mind, let us trace and examine the entire problem at bar.

Respondents open with the premise that "absence" is an ordinary and simple word, unambiguous and not requiring interpretation. We disagree. "Absence" *is* ambiguous. "Many words of common use in our language have two or more meanings. It is not infrequent that a word having one meaning in its ordinary employment has a materially different or modified meaning in its legal use. This word 'absence' is a fair example. It

---

[3]Substantially identical provisions are contained within NRS 223.070.

has been held that one may be absent, though actually present, as where a judge, though on the bench, does not sit in the cause. He is there taken as absent in contemplation of law. Bingham v. Cabbot, 3 Dall. 19, 1 L.Ed. 491; Byrne v. Arnold, 24 New Br. 161. It has also been held to mean 'not present.' Paine v. Drew, 44 N.H. 306. It has been held, too, as not meaning 'out of the state only.' James v. Townsend, 104 Mass. 367." Watkins v. Mooney, 114 Ky. 646, 71 S.W. 622.

The word "absence" as used in our Constitution does need interpretation. We find no clue in our constitutional debates[4] and therefore look elsewhere. As before indicated, overwhelming case authority supports the petitioner's contention that "absence" means "effective absence."

As far back as 1872, the Nebraska Supreme Court in People ex rel. Tennant v. Parker, 3 Neb. 409, 19 Am. Rpts. 634, cautioned that to accept "strict" absence forced one to "reflect upon the possible consequences of such a construction of the Constitution, upon the disgraceful tricks, strifes and exhibitions, which might be entailed upon the people of the State * * *." That court felt it was necessary to adopt "a more salutary rule, one which, while it will insure the efficient administration of the affairs of State during a brief temporary absence of the executive, will at the same time protect this department of the government against unnecessary and ill-advised intrusion."

The conflict, then, is between the citizens' right to have, at every moment, an official ready, willing and able to fulfill all duties and powers entrusted that *office* by the electorate—along with a disdain for government by absentee officials; and at the same time the citizens' equal right to realize the unintruded policies of the *individual* they placed in that office. Thus in event of a specified official's physical non-presence, the crux of a provision for succession in the event of "absence" is the state's immediate need for a specific act or function. Certainly, where the act or function performed by the successor is obviously contrary to policies of the absentee official,

[4]Nevada Constitutional Debates & Proceedings, p. 160.

a closer scrutiny is warranted to determine if the "absence" was "effective."

In the instant matter, the governor was outside the state for only a few hours, and these on a Sunday evening. Not only was there no immediate need for an NRS 6.135 request during that brief period, but, as events proved, no action could even be initiated on such a request until courts opened Monday morning, at which time the governor had returned.

Accord: State ex rel. Warmoth v. Graham, 26 La. Ann. 568, 21 Am.Rpts. 551; State ex rel. Crittenden v. Walker, 78 Mo. 139; Mayor of Detroit v. Moran, 46 Mich. 213, 9 N.W. 252;[5] Watkins v. Mooney, 114 Ky. 646, 71 S.W. 622;[6] State ex rel. Olson v. Lahiff, 146 Wis. 490, 131 N.W. 824; Cytacki v. Buscko, 226 Mich. 524, 197 N.W. 1021; Gelinas v. Fugere, 55 R.I. 225, 180 A. 346; and In re An Act Concerning Alcoholic Beverages, 130 N.J.L. 123, 31 A.2d 837.

Allegedly contra are Application of Crump, 10 Okla. Crim.Rep. 133, 135 P. 428, 47 L.R.A. (N.S.) 1036; Montgomery v. Cleveland, 134 Miss. 132, 98 So. 111, 543; 32 A.L.R. 1151; and Walls v. Hall, 202 Ark. 999, 154 S.W.2d 573, 136 A.L.R. 1047. We have studied these cases and disagree with their reasoning.[7]

3. We have decided that the lieutenant governor was not empowered to request the impanelment of a state grand jury in the circumstances here involved. Though unnecessary, we choose briefly to discuss the second question, i.e., assuming a valid request by the lieutenant governor, was that request revoked? In our view the revocation was effective. The "separation of powers"

---

[5]Respondents argue that "mayoral" cases interpreting "absence" vis-a-vis city charters or state statutes are inapplicable in considering the instant constitutional provision. We disagree. In fact, both "mayoral" and "gubernatorial" cases generally interchange citations and authorities, the principles involved in both being, for all practical purposes, identical.

[6]Cf. Commonwealth v. Ginn & Co., 120 Ky. 83, 85 S.W. 688.

[7]See the well-presented dissent in Montgomery v. Cleveland, supra.

concept is not involved, for under NRS 6.135 the judge to whom the request for a state grand jury is presented acts ministerially rather than judicially in entering the order requested. Here, the revocation occurred before the court could act at all.

Writ granted.