FRED A. RISSER, Chairman Senate Committee on Organization
The Senate Organization Committee has requested my opinion on the following question:
 Is the tie breaking vote cast by Lieutenant Governor Russell Olson on the date of February 27, 1979, on the question of indefinite postponement of 1979 Senate Bill 5, as shown on page 183 of the Senate Journal, in violation of Articles IV and V of the Wisconsin Constitution in that, at the time the vote was cast, Governor Lee Sherman Dreyfus was out of the State?
Presumably, your question makes reference to the following provisions of the Wisconsin Constitution: art. V, sec. 8, which provides that the lieutenant governor shall be president of the Senate but may only cast a tie-breaking vote therein; art. V, sec. 7, which provides that, in the event of the "absence [of the governor] from the state, the powers and duties of the office shall devolve upon the lieutenant governor . . . until the governor . . . shall have returned"; and art. IV, sec. 9, which provides that "the senate shall choose a temporary president when the lieutenant governor shall not attend as president, or shall act as governor." *Page 110 
Under Wis. Const. art. V, sec. 7, it is evident that, when the governor is "absent" from the state and the powers and duties of that office devolve upon the lieutenant governor, the lieutenant governor does not become governor and does not vacate the office of lieutenant governor. State ex rel. Martin v. Ekern,228 Wis. 645, 659, 280 N.W. 393 (1938). It is likewise clear that, since the lieutenant governor is ex officio president of the Senate by virtue of Wis. Const. art. V, sec. 8, he is not divested of that office by virtue of the absence of the governor. Under Wis. Const. art. IV, sec. 9, however, it is contemplated that the Senate will choose a temporary president when the lieutenant governor "shall act as governor."
The Wisconsin Supreme Court has never directly considered what constitutes the governor's "absence from the state" within the meaning of Wis. Const. art. V, sec. 7. Although a number of other jurisdictions have considered this issue, in reference to constitutional language either similar or virtually identical to that used in our constitution, there is a clear split of authority on the issue of what constitutes "absence" under such a constitutional provision. 38 Am. Jur. 2d Governor sec. 13, p. 942. Some jurisdictions hold that even a very short, temporary absence results in the devolution of the governor's powers. ExParte Crump, 10 Okla. Crim. 133, 135, 135 P. 428 (1913);Montgomery v. Cleveland, 134 Miss. 132, 98 So. 111,32 A.L.R. 1151 (1923); Walls v. Hall, 202 Ark. 999, 154 S.W.2d 573,136 A.L.R. 1047 (1941); State v. Garvey, 67 Ariz. 304, 195 P.2d 153, (1948), by implication; State v. Patterson, 197 Or. 1, 251 P.2d 123,126 (1952). Thus, in Ex parte Crump, 135 P. at 436, the court states:
 [T]he plain intention of the framers of the Constitution and the people in adopting it was to provide that in his [the Governor's] absence from the state for any purpose or for any period of time, however short, his constitutional functions shall devolve upon the Lieutenant Governor as acting Governor. . . . [T]he constitutional functions of his office belong to the public and are confined to the state and cannot be exercised out of the state; when he leaves the state, the constitutional functions of his office devolve pro tempore upon the Lieutenant Governor; and, when he returns to the state ipso facto, he resumes all of the powers, functions, and duties of his office, and the Lieutenant Governor theretofore administering the executive functions temporarily under the Constitution ceases to be acting Governor. *Page 111 
On the other hand, other jurisdictions hold that only an "effective absence," i.e., an absence which will effectively prevent the governor from exercising the powers and duties of his office, results in the devolution of the governor's powers and that a mere temporary absence which would not so injuriously affect the public interest is not included within the constitutional provision. State ex rel. Warmoth v. Graham, 26 La. Ann. 568, 21 Am. Rep. 551 (1874); State ex rel. Crittenden v.Walker, 78 Mo. 139 (1883); In re An Act Concerning AlcoholicBeverages, 130 N.J.L. 123, 31 A.2d 837 (1943); Sawyer v. FirstJudicial District Court, 82 Nev. 53, 410 P.2d 748 (1966). Thus, in Sawyer, 410 P.2d at 749, the court states:
 All agree that the governor was not physically present in Nevada at the moment in question. The dispute is whether "absence from the state" as contained within Sec. 18 was intended by the framers of our state Constitution to mean simply physical nonpresence, however brief, or whether it was written into our Constitution to indicate some other condition. The overwhelming majority of states which have examined identical or nearly identical provisions have found that "absence" as contained within rules for orderly succession in government means "effective absence" — i.e., an absence which is measured by the state's need at a given moment for a particular act by the official then physically not present.
 We find no reason to contradict this century-long compilation of decisions. Rather, we consider their logic proper and reasonable and conclude that it most nearly satisfies the role of any government.
The Sawyer case citations include a number of cases interpreting the word "absence" as used in laws which provide that the duties of a mayor shall be performed by another officer in his absence. The application of such cases was rejected by the majority and cited in the dissent in Montgomery.
Wisconsin Constitution art. V, sec. 7, provides:
 In case of the impeachment of the governor, or his removal from office, death, inability from mental or physical disease, resignation, or absence from the state, the powers and duties of the office shall devolve upon the lieutenant governor for the residue of the term or until the governor, absent or impeached, shall *Page 112 
have returned, or the disability shall cease. But when the governor shall, with the consent of the legislature, be out of the state in time of war, at the head of the military force thereof, he shall continue commander in chief of the military force of the state.
This section can be read one of two ways. First, "absence" could refer to any physical absence. This interpretation is supported by reading the last provision to mean that the governor retains his powers on leaving the state only in regard to heading the military and only if the Legislature consents to his absence for that purpose. Arguably, this language by implication means that in the case of any other absence, the powers of governor immediately devolve upon the lieutenant governor. On the other hand, it can be argued that "absence" refers only to an "effective absence," i.e., only an absence which prevents the governor from discharging duties which need to be done before his return. The framers of the constitution presumed, as they quite reasonably would in the mid-nineteenth century, that any absence from the state would prevent the governor from discharging the duties of his office. At this point in our history, an absence was a threat to the continued operation of the government. This construction is reinforced by contrasting absence with the other situations giving the lieutenant governor the powers of governor, namely, death, resignation, and inability to perform by reason of mental or physical disease. With the subsequent advent of efficient air travel and instant world-wide telephonic communication, this construction would conclude that the word "absence" will subserve its historical purpose by construing it to mean "effective absence," i.e., only such an absence as prevents the governor from discharging duties which need to be done before his return.
There is some reason to believe that the Wisconsin Supreme Court would adopt the "effective absence" approach. See, for example, State ex rel. Olson v. Lahiff, 146 Wis. 490,131 N.W. 824 (1911), where the court took this approach in regard to a municipal ordinance which provided that a city council president had the powers of mayor during the mayor's absence from the city. If the court took this approach under the state constitution, the lieutenant governor would have the powers of the office of governor during the latter's physical absence from the state only in respect to those absences which prevent the governor from discharging duties which need to be performed before his return. Further should the court take this *Page 113 
approach, the lieutenant governor's tie-breaking vote on February 27, 1979, would be valid unless in fact he was, at the material time in question, discharging the duties of the office of governor.
Although there is some hazard in speculating whether the Wisconsin Supreme Court would apply the "effective absence" approach to the state constitution, I am persuaded that it would refuse to rule whether the lieutenant governor's tie-breaking vote was valid. First, the issue has become moot by reason of the referendum of April 3, 1979, in which the voters chose to amend the constitution by removing the lieutenant governor from the role of president of the Senate. The issue never will arise again. Second, the question does not deal with a final vote of the Senate on a piece of legislation. It relates only to the adoption of a motion to indefinitely postpone the bill, the effect of which the Senate can reverse at any time it chooses. Wis. Const. art. IV, sec. 8. Ordinarily under such circumstances, allegations of illegal legislative procedure will not be reviewed by the courts or by this office. 63 Op. Att'y Gen. 305 (1974). As stated in Outagamie County v. Smith, 38 Wis.2d 24, 41,155 N.W.2d 639 (1968):
 This court will not interfere with the conduct of legislative affairs in the absence of a constitutional mandate to do so or unless either its procedure or end result constitutes a deprivation of constitutionally guaranteed rights. Short of such deprivations which give this court jurisdiction, recourse against legislative errors nonfeasance, or questionable procedure is by political action only.
Finally, one of the venerable principles of constitutional law is that the courts will decide cases on constitutional grounds only where there is no other way to dispose of the case.
Accordingly, it is my view that although the Wisconsin Supreme Court probably would construe "absence" within the meaning of Wis. Const. art. V, sec. 7, as meaning "effective absence," it would refuse to rule whether the lieutenant governor's tie-breaking vote was valid because that issue has become moot, never will recur, concerns a procedural vote which the Senate itself can overturn, and affects no constitutionally guaranteed rights.
BCL:CDH *Page 114