## Linda Scrivens v. Elizabeth Lund Home

[421 A.2d 1276]

No. 87-80

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

September 8, 1980

*Blodgett & McCarren*, Burlington, for Plaintiff.

*Michael B. Clapp* of *Dinse, Allen & Erdmann*, Burlington, for Defendant.

**Hill, J.** This case comes before us on appeal from a denial of habeas corpus relief by the lower court. The procedures used by the Chittenden Probate Court charged with the administration of adoption proceedings are called into question.

Linda Scrivens, an adult, is the mother of an illegitimate child. She relinquished the child to the defendant, a properly licensed child placing agency, pursuant to 15 V.S.A. § 432. She now alleges the nullity of the probate court order of relinquishment as being beyond the authority of the signatory of that order. She also alleges fraud, duress, coercion and undue influence committed on her by agents of the defendant.

As the procedures used by the probate court violate the statutory scheme created to insure careful handling of adop-

tion cases, we do not reach the issue of unfair pressure. We reverse.

Plaintiff spent several months of her pregnancy in the care of defendant Elizabeth Lund Home, at first as a resident in an adoption program and later as a member of a counseling program. The record reflects the trauma of deciding whether to give a child up for adoption. She twice cancelled appointments for the signing of relinquishment papers at the Chittenden Probate Court. Finally on May 25, 1979, an appointment was made for May 29. On that day plaintiff, accompanied by defendant's agent, went to the probate court for the purpose of filing relinquishment papers. The duly elected judge of probate for the district of Chittenden was not physically present in the courthouse. Upon plaintiff's filing of the relinquishment, the register of probate held a hearing and signed the order of termination of parental rights. 15 V.S.A. § 432(b) requires that a hearing be held within 10 days for the court to decide whether to terminate parental rights. The register understood she had authority to sign the order by virtue of 4 V.S.A. § 355, which reads:

> When a probate judge is incapacitated for the duties of his office by absence . . . he shall not act as judge. His duties shall be performed by the register, if not disqualified, or a judge of another district . . . . The register . . . shall have jurisdiction to act while such . . . incapacity . . . exists.

Within hours of signing of the order, plaintiff returned to the probate court and requested that the relinquishment papers be "torn up." The register refused. See 15 V.S.A. § 432(b). With the exception of a portion of the day on May 29, 1979, during which the order terminating her parental rights to her natural child was executed, and May 30, a state holiday, the elected probate judge worked a full week.

Plaintiff claims that the register did not have statutory authority to terminate her parental rights. We agree.

Our decision turns on the definition of the phrase "incapacitated . . . by absence" in 4 V.S.A. § 355. Defendant, citing Webster's New Twentieth Century Dictionary, Second Edition, claims the phrase "is perfectly clear and apparent from the plain and commonly accepted meaning" and is used to connote

that the statutory power given to the register to act arises whenever the judge is not present at the time set for a hearing. The legislative intent, defendant argues, is that the probate court be open for business at all times.

We do not question the benefits of having, at every moment, an official ready, willing and able to fulfill all the duties and powers entrusted to a public office. Yet here we have an elected and sworn individual entrusted with a certain job and its concomitant responsibilities. We do not think it too much to expect that the probate judge, a constitutional officer, will perform that task.

■ Read in context, it is clear that the Legislature did not intend absence to mean mere physical nonpresence. Vermont law does not provide specific precedent for interpreting the language in 4 V.S.A. § 355. Defendant's argument that the meaning of "absence" is "perfectly clear" is elementary and superficial. Words having one meaning in their ordinary employment often have materially different or modified meanings in their legal usages. See *Watkins* v. *Mooney*, 114 Ky. 646, 71 S.W. 622, 623–24 (1903). See also *In re Hatch*, 130 Vt. 248, 251, 290 A.2d 180, 182 (1972).

The Legislature made provisions for the register to perform certain tasks if the probate judge is unavailable. The intent was to ensure that matters requiring immediate handling receive the necessary attention. "Absence" must be defined in a reasonable, not a literal, fashion. See *Gelinas* v. *Fugere*, 55 R.I. 225, 180 A. 346 (1935). As noted in *Sawyer* v. *First Judicial District Court*, 82 Nev. 53, 57, 410 P.2d 748, 750 (1966), the crux of a provision for succession in the event of "absence" is the state's immediate need for a specific act or function.

We empathize with defendant's claim that adoption cases demand a unique degree of finality. A young child's stability is threatened by unfortunate litigation. However, the adoption process has been developed to guarantee careful deliberation and responsible decision-making. Adoption cases often present a conflict between adoption homes and mothers. This case indicates the potential for an unseemly scramble for power. The process cannot be threatened by a probate judge who absents himself from his office for however short a time leaving a register to exercise unwarranted authority.

"Absence" was intended by the Legislature to mean "effective absence," and a register may only perform the probate judge's duties pursuant to 4 V.S.A. § 355 if the judge is away from court, cannot be reached, and the situation demands immediate attention. Vacationing at a summer home within the same probate district (in fact, in Burlington itself) is not such an "absence."

And, clearly no such emergency arose in the present situation. The probate judge knew of plaintiff's appointment several days in advance. A hearing for the purpose of terminating parental rights of the natural parent must follow within 10 days the filing of the written relinquishment of those rights. 15 V.S.A. § 432(b). In this case the register held the hearing immediately upon receipt of the plaintiff's relinquishment. The hearing beat the judge's return by only a few hours. It was more than nine days earlier than necessary.

█ An assumption of power not authorized by law is void. *Barber* v. *Chase*, 101 Vt. 343, 354, 143 A. 302, 305 (1928). The register under these circumstances was without authority to hold a hearing or issue an order terminating the parental rights. Because more than 10 days passed after plaintiff filed the relinquishment, without a lawful hearing and order having been executed thereunder, the relinquishment expired. See 15 V.S.A. § 432(b).

*The judgment of the Chittenden Superior Court is reversed. Judgment is entered that the purported order of the Chittenden Probate Court terminating the parental rights of petitioner Linda Scrivens is void, that the petitioner's purported relinquishment is void and that she is entitled to care and custody of the minor child in question, to be delivered to her forthwith by the petitionee. To be certified forthwith to the Chittenden Superior Court and to the Chittenden Probate Court.*